13478

REEVES v. CITY OF EASLEY

(166 S. E., 120)

232

*Messrs. J. D. Wyatt* and *Blythe & Bonham,* for appellant,

*Messrs. B. F. Martin, Price & Poag, W. C. Mann* and *S. B. Craig,* for respondent,

October 1, 1932.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The cause of action upon which plaintiff relies is thus condensed from the complaint: The defendant is a municipal corporation. It maintains a volunteer fire department, of which it has exclusive control. It also maintains a police department for protection of the city and maintenance of law and order. Plaintiff was a member of the volunteer fire department; it was his duty as such fireman to respond to alarms, board the fire trucks and fight fires; that on April 7, 1930, he and his company responded to an alarm of fire, and on the fire truck proceeded rapidly to the scene of the fire; that the police department on such occasions, and at other times, used an automobile to transport police officers on various missions, including the transporting of said officers to fires to assist in preserving order and protecting life, persons, and property; that on this occasion the fire truck was followed by the police car; that when the fire truck reached the scene of the fire, plaintiff sprang off the rear of the truck into the street to go to the fire; that the police car was negligently and recklessly driven so close to the fire truck, and was so mismanaged as to make the city's streets defective and dangerous, and as a result thereof was driven upon plaintiff, inflicting upon him serious and permanent injuries, causing him physical and mental pain and putting him to much expense.

For answer the defendant admits its corporate capacity and that it maintains a fire department and a police department; that the automobile which is alleged to have caused the injury to plaintiff was not driven by a member of the police department, or other officer or agent of the defendant, but by one not an officer or agent of defendant, and without defendant's permission or knowledge; that plaintiff had been for some time a member of the volunteer fire department, was fully cognizant of the dangers of his employment, which

he assumed; that plaintiff's injury was caused by his own negligence, or he negligently contributed thereto.

The case came to trial on these issues, before Judge H. F. Rice and a jury, at the October, 1931, term of the Court of Common Pleas for Pickens County.

At the close of the testimony for plaintiff, counsel for defendant made a motion for nonsuit, which was overruled. The defendant offered no evidence. The verdict was for plaintiff, and from the judgment entered thereon defendant appeals.

There are six exceptions, but in the opinion of this Court the appeal is settled by the answer to the one question: Should the nonsuit have been granted on the ground that there is no proof of actionable negligence on the part of the defendant which brings the case within the provisions of Section 7345 of the Code of 1932.

It is the established law of this State that a city, being an integral part of the sovereignty of the State, may not be sued in tort, except in such cases as the right of action is expressly given by statute, and in such cases as are protected by the provisions of Article 1, § 17, of the Constitution to the effect that: "Private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made therefor." When a statute gives a right of action against the State, county, or city, or other subdivision of the sovereign authority, it is the rule of the law that such statute must be strictly construed. "This Court has held that an * * * act * * * in derogation of the sovereign power of the state, must be strictly construed." *Ancrum v. State Highway Department*, 162 S. C., 507, 161 S. E., 98, 99.

One counsel in argument states that the action is brought under the provisions of Section 3475 of the Code of 1932; the other counsel states that it is brought under Section 5856 of the new Code. We think both of them are in error. Section 3475 relates to the duty of coroners in certain con-

tingencies; Section 5856 relates to actions against counties to recover damages for defects in highways, etc.; Section 7345 relates to "Causes of Action for Damages from Defects in Streets, Mismanagement, Etc."

However, the text of Section 7345 is correctly set out in the brief of respondent's counsel, and it is agreed that this action is laid under the provisions of that section, which are as follows:

"Any person who shall receive bodily injury, or damages in his person or property, through a defect in any street, causeway, bridge or public way, or by reason of defect or mismanagement of anything under control of the corporation within the limits of any town or city, may recover, in an action against the same, the amount of actual damages sustained by him by reason thereof. [Irrelevant sentence omitted.] Provided, the said corporation shall not be liable unless such defect was occasioned by its neglect or mismanagement:

"*Provided, further,* Such person has not in any way brought about any such injury or damage by his   *   *   * own negligent act or negligently contributed thereto."

There are two lines of cases in the construction of this statute and the kindred one affecting counties. The one standing for a strict compliance with the provisions of the enabling statute, and the other for a more liberal interpretation and application. Apparently no effort has ever been made to reconcile these differences of opinion, and hence there are the two lines of apparently irreconcilable cases.

Which of them is founded in reason and is upheld by the authority of the statute?

The first authoritative interpretation of the statute which is applicable to this action was made by that great jurist Chief Justice McIver in the case of *Dunn v. Barnwell,* 43 S. C., 398, 21 S. E., 315, 316, 49 Am. St. Rep., 823.

Dunn brought action against the Town of Barnwell to recover damages for injuries to his horse which caused its

death. The complaint alleged that the town had permitted the erection of booths in a narrow and much used street; that the horse took fright at something displayed in a booth, ran against the shaft of a buggy which penetrated its body and caused its death.

Referring to the Act which we are now considering, the opinion, after quoting the Act, proceeds in this wise: "It is apparent from the title of this Act, as well as from the terms used in the body of the Act, that the sole *purpose* [italics ours] was to give a person who had sustained an injury *by reason of a defect in a street* [these italics are in the opinion] a right of action to recover damages for such injury. The title of the Act is as follows: 'An Act providing for a right of action against a municipal corporation for damage sustained by reason of defects in the repair of streets, sidewalks and bridges within the limits of said municipal corporation.' And it is manifest that the purpose thus declared in the title was adhered to in the body of the Act; especially from the language used in the proviso above set out, where it is declared that the corporation should not be liable *'unless said defect was occasioned by its neglect or mismanagement,'* indicating very clearly that the term 'mismanagement,' as used in a previous part of the Act, meant *mismanagement in making repairs on the streets,* so that the corporation should be held liable, not only for neglect in making the repairs on the street, *but also for mismanagement of anything under the control of the corporation in making such repairs.*"

The last four words just above quoted were emphasized in the opinion; we have added the other emphasis. We quote further from the same opinion this: "This does not give the plaintiff any cause of action, either under the statute or at common law, as has been held by this Court in several cases, when called upon to construe a previous statute of similar tenor, so far as the present question is concerned, though differing in some other respects not pertinent to the present

inquiry. See what is said in *Acker v. Anderson County*, 20 S. C., 495, at page 498, where, though the point was not decided, because not necessary to that case, yet a very strong intimation was thrown out in favor of our view. See, also, *Brown v. Laurens County*, 38 S. C., 282, 17 S. E., 21, and *Mason v. Spartanburg County*, 40 S. C., 390, 19 S. E., 15 [42 Am. St. Rep., 887]."

In *Acker v. Anderson County*, the action was based upon the allegation that plaintiff's horse took fright at an advertisement in large black letters posted on the bridge plaintiff was crossing. The action was under the statute of 1874, giving a right of action against counties, now embodied in Code of 1932 as Section 5856. The opinion of the Court was by Mr. Justice McGowan; *inter alia* he said: "The only matter for which the Act gives an action against the county is 'a defect in the repair of a highway, causeway or bridge.' "

In *Brown v. Laurens County*, 38 S. C., 282, 17 S. E., 21, the allegations are that, while plaintiff was on a bridge, in a buggy, the horse took fright at a piece of timber, lying near for the repair of the bridge, and backed the buggy off the bridge at a point where there was no railing; a nonsuit was granted on circuit. Delivering the opinion of the Supreme Court, sustaining the order of nonsuit, Mr. Justice McGowan said: "There was no allegation of any 'defect in the repair of the bridge,' except the absence of one piece of railing or bannister. That alone could not, with any propriety, be called such 'a defect in the repair' as the law contemplates."

In *Mason v. Spartanburg County* the complaint alleged that plaintiff's horse became frightened by a hole under the bridge and backed the buggy off the bridge. A nonsuit was granted on circuit, because "there was no evidence * * * that the plaintiff had been injured *through* a defect in the highway, causeway, or bridge" but that the injury was due to the fright of the horse. The order of nonsuit was affirmed on appeal.

The case of *Barksdale v. City of Laurens,* 58 S. C., 413, 36 S. E., 661, 662, strongly sustains the rule laid down in *Dunn v. Barnwell, supra.* There a lad of 14 years, employed to carry water to those who were engaged in work on the streets of the City of Laurens, mounted a steam roller, being used in repairing the street, for the purpose of giving water to the operator of the steam roller, and was injured in alighting therefrom. From an order of nonsuit an appeal was taken. Mr. Justice Jones, afterwards Chief Justice, in delivering the opinion of the Court, after quoting the language of the Act of 1892 (21 St. at Large, 91), said: "The title of said Act of 1892 is, 'An Act providing for a right of action against a municipal corporation for damages sustained by reason of defects in the repair of streets, sidewalks and bridges within the limits of such municipal corporation.' This Act was construed in the case of *Dunn v. Barnwell,* 43 S. C., 401, 21 S. E., 315 [49 Am. St. Rep., 843], wherein the Court held that the term 'mismanagement,' as used in the clause, 'or by reason of defect or mismanagement of anything under control of the corporation,' meant mismanagement *in making repairs on the street, so that the corporation should be held liable not only for neglect in making repairs of the streets, but also for mismanagement of anything under the control of the corporation in making such repairs."* (All italics added by us, except as to the words "in making such repairs," which were emphasized in the opinion.)

Continuing the quotation from the case: "We are also of opinion that the terms of the Act, 'by reason of defect or mismanagement of anything under control of the corporation,' are broad enough to include mismanagement of a steam roller under control of the municipality, *and while being used in repairing its streets."* (Italics added.)

Here is the reiterated declaration that in order to hold a municipality for damages sustained because of "defect or mismanagement" of anything under its control, such in-

strumentality, when it inflicted the injury, must have been engaged in making repairs on the streets, bridges, causeways, or public ways of the municipality.

The case of *Hutchison v. Summerville*, 66 S. C., 448, 45 S. E., 8, 10, discloses these facts. Along Sumter Street ran a path or walkway wholly in the city and under its control and management; that the city rebuilt and repaired this walk, and through its negligence and mismanagement caused it to end abruptly at a deep ditch which was left unguarded; plaintiff was at night walking on said path, with no knowledge or warning of the dangerous condition, and fell into this ditch, or excavation, and suffered injuries for which he brought his action. He had a verdict on circuit. On appeal the Supreme Court, affirming the judgment, quoted with approval the opinions in the cases of *Dunn v. Barnwell* and *Barksdale v. Laurens, supra,* and added: "The municipality is liable not only for its neglect in failing to make repairs on the streets, but likewise for its negligence in making such repairs. In other words, it is liable for its negligent nonaction as well as for its negligent action in making repairs."

Here is the same clear and comprehensive interpretation of the Act of 1892 as is embodied in the *Dunn* and *Barksdale cases.*

The case of *Bryant v. City Council of Orangeburg,* 70 S. C., 137, 49 S. E., 229, 231, is an enlightening and persuasive case. A small child, a girl, was knocked down and injured by a boy riding a bicycle on a sidewalk of street in the City of Orangeburg. There were two causes of action set forth in the complaint. We are concerned only with that which sought to recover under the Act of 1892. Defendant demurred. The Circuit decree, sustaining the demurrer, was so conclusive that the Supreme Court, through Mr. Justice Woods, adopted it as the opinion of the Court.

After quoting the language of the Act of 1892, the decree of the Circuit Judge said: "In the very recent case of

*Hutchison v. Summerville,* 66 S. C., 448, 45 S. E., 8, 10, the Court says, 'the statute received judicial construction in *Dunn v. Barnwell,* 43 S. C., 398, 21 S. E., 315, 49 Am. St. Rep., 843'; and in *Barksdale v. Laurens,* 58 S. C., 413, 36 S. E., 661. In the last-mentioned case the Court says, 'The title of said Act of 1892 is, "An Act providing for a right of action against a municipal corporation for damages sustained by reason of defects in the repair of streets, sidewalks and bridges within the limits of such municipal corporation." This Act was construed in the case of *Dunn v. Barnwell,* 43 S. C., 401, 21 S. E., 315, 49 Am. St. Rep., 843, wherein the Court held, by the term "mismanagement," as used in the clause, "or by reason of defect or mismanagement of anything under control of the corporation," meant mismanagement in making repairs on the streets, so that the corporation should be held liable not only for neglect in making repairs on the streets, but also for mismanagement of anything under the control of the corporation *in making such repairs.'*  *  *  *

" 'I am of the opinion and conclude, as matter of law, that said Section 2023 [now Section 7345, Code 1932], does not give to the plaintiff a right of action for damages under the facts alleged in the complaint.' "

Here again is the unqualified indorsement of the legal interpretation of the Act under which the present action is brought, that in order to hold the municipality liable in damages under the Act of 1892, it must be alleged and proved that the "defect or mismanagement" set forth as the ground of action occurred in making repairs in the streets.

Stress is laid in argument upon the case of *Duncan v. Greenville County,* 71 S. C., 170, 50 S. E., 776. It appears to us that that case is in strict harmony with the principle enunciated in *Dunn v. Barnwell,* and consistently followed. In the *Duncan* case the county authorities left at night a wagon, *which they were using during the day in making repairs upon the highway,* unguarded and unlighted, in posi-

tion to be a menace to travelers rightfully upon the highway. The situation depicted falls directly under the provision of the statute; the instrumentality, a wagon, was being used for repairs on the highway; it was under the control of the county; it was mismanaged in such manner as to render the highway unsafe.

We come now to the first apparent break in this line of cases. It is the case of *Irvine v. Greenwood,* 89 S. C., 511, 72 S. E., 228, 231, 36 L. R. A. (N. S.), 363. The facts are these. The City of Greenwood owns and operates its lighting plant. Claude Irvine, a youth of 17 years, was playing a game of ball in the street. On the side of the street, on the edge of the drain between the sidewalk and the street, was an electric light pole from which an arc light was suspended. A metallic chain, used for the purpose of raising and lowering the light, hung down the side of the pole next to the street, and formed a loop about five or six feet above the ground. Young Irvine, in his play, slipped and caught this loop to save himself from falling; it was charged with electricity and he was killed. The case went to the Supreme Court on appeal. An elaborate and powerful opinion was written by that fine jurist Associate Justice Woods. He declared that the Court was unwilling to give to the statute of 1892 the meaning given in the *Dunn, Hutchison,* and *Bryant cases.* He thought it too narrow. The great humanitarian heart of this most excellent gentleman went out in sympathy for the poor boys who had no place to play except the streets. He held that *"in this case the pole was placed in the street as a fixture, and became a part of the street, which it became the duty of the municipal authorities to keep safe."* (Italics added.)

This holding sharply differentiates that case from the case now before this Court for review. There is here nothing under the control or management of the Town of Easley of a fixed nature which had become a part of the street which the town must keep safe.

In the case of *Stone v. Florence,* 94 S. C., 375, 78 S. E., 23, the question was whether the leaving of an open ditch, adjacent to, if not in the street, brought the action within the purview of the statute of 1892. The *Irvine case* was quoted with approval but the decision was rested primarily upon the authority of the cases of *Duncan v. Greenville* and *Hutchison v. Summerville, supra.* It is easily understandable that the leaving of such a ditch, a permanent thing, in the street, was a defect in something under the control of the city. The case is not authority for the position taken by respondent in our case.

Then followed the famous case of *Creps v. City of Columbia,* 104 S. C., 371, 89 S. E., 316, 317. It was in reference to this case that the trial Judge in the case now at bar, in refusing the motion for nonsuit, said: "Under the *Creps case* I will have to submit this to the jury. I think the *Creps case* is wrong, but as long as it is there I will have to hold on to it."

In that case Corrie Creps, the plaintiff, was standing on the sidewalk of a street in the City of Columbia, when, as alleged in the complaint, a team of large, strong, and dangerous horses, under the careless, reckless, and negligent management of the fire department of the defendant dashed against her and injured her. The action was brought under the Act of 1892. A demurrer to the complaint was overruled, and a verdict was given plaintiff. The opinion on appeal, rendered by Mr. Justice Watts, afterwards Chief Justice, went further than the Court had ever gone before, or has ever gone since, in holding that the facts brought the case within the scope of the Act. The epitome of the decision is in these words: "It [the city] controlled the repair of the streets and the fire department. If the fire department controlled by the defendant, traveling the streets recklessly and carelessly, so mismanaged its team as to render it unsafe for parties using the streets as to injure any one, the

injured one being free from carelessness and fault, then under the circumstances the party injured could recover."

It is apparent from the language of the opinion that the distinguished author of it conceded that, in order to bring the case within the provisions of the Act of 1892, the injury must have occurred by reason of something connected with repairs of the street.

In this case the departure from the rule established in *Dunn v. Barnwell, supra,* reached its high water mark. What has been the judicial history of the question since?

The case of *Burnett v. City of Greenville,* 106 S. C., 255, 91 S. E., 203, 204, Ann. Cas., 1918-C, 363, was brought to recover damages for personal injuries sustained by collision with an automobile which was racing on a principal street of the city with the consent of the city council and police. Mr. Justice Gage for the Court said: "We are of the opinion that the street thus dedicated by the authorities to a hazardous use was not then reasonably safe for prime street purposes. We have held the City of Columbia liable in tort under that portion of the statute we have signalized by the numeral (3) for injuries inflicted by its flying fire car bent on a public mission. *Creps v. Columbia,* 104 S. C., 372, 89 S. E., 316. Much more ought Greenville to be liable when flying autos imperiled the reasonably safe use of the streets by the people, *and when the autos were not in the performance of a public duty."*

It strikes us that, if the reasoning employed in the above case were carried to its logical conclusion, it would render a municipal corporation liable for injuries inflicted upon one, who was lawfully using the street, by a reckless or drunken driver of a private car, on the theory that the municipality has control and management of the streets, and it is its duty to keep them "reasonably safe for prime street purposes," and, as it also has control and management of its police department, it ought therefore to keep off of the streets reckless and drunken drivers of dangerous instru-

mentalities. Would such a doctrine be contended for? That is almost the conclusion reached in the case of *Sexton v. City of Rock Hill,* 107 S. C., 505, 93 S. E., 180, 181.

Sexton was riding a bicycle, in the very early morning, along a street in the City of Rock Hill; at the intersection of two streets he was struck by the automobile of Haller & Haily, who were in no wise connected with the city. The allegation of negligence against the city was that the arc light kept by the city at this point was not burning, and had not been lighted for several nights. There was a verdict for plaintiff against the city. On appeal the opinion was by Mr. Justice Gage, who said: "And beyond all peradventure, when the lighting plant belonged to the city, and the city saw the need of a lamp at the locus in question, and put the lamp there, and lighted it on occasion, then a negligent failure to light it on the instant occasion would be a 'mismanagement' of the lamp."

From this time the tide began to turn back to the sound and logical rule of the *Dunn case,* and the numerous subsequent cases which followed that rule.

The case of *Triplett v. City of Columbia,* 111 S. C., 7, 96 S. E., 675, 677, 1 A. L. R., 349, was brought to recover damages for illness alleged to have been caused by the city in allowing surface water to collect and stand in the street adjacent to plaintiff's place of residence which caused sickness. The action was brought under the Act of 1892. The case was heard on Circuit by Judge Mendel L. Smith, on a motion to dismiss the complaint. In a most thorough and able order, he reviewed all of the cases touching every aspect of liability under the statute, including the *Creps case,* and held that the action could not be maintained.

On appeal the Supreme Court said: "We are satisfied with the reasoning upon which the Circuit Court reached the conclusion that this action cannot be maintained under Section 3053, Civil Code 1912." Act 1892. The case was heard at the April, 1918, term of the Supreme Court.

It would seem that the failure of a municipal corporation to drain its streets, in consequence of which water ponded in the streets and caused sickness, was more nearly akin to the "mismanagement" of which the statute speaks, which amounts to a defect in the street, than is the reckless driving of a fire truck or a police car.

*Gilchrist v. City of Charleston,* 115 S. C., 367, 105 S. E., 741, was an action to recover damages for injuries sustained by a pedestrian on a street of the city who was struck by a sky rocket as the result of the failure of the police to enforce an ordinance of the city which prohibited the setting off of fireworks on the streets of the city. The Circuit Court overruled a demurrer to the complaint. Mr. Justice Hydrick, delivering the opinion of the Court, said:

"It has been settled by repeated decisions of this Court that a municipal corporation, being an agency of the state for governmental purposes, cannot be sued in tort, except where such an action is given by statute. *Triplett v. Columbia,* 111 S. C., 7, 96 S. E., 675, 1 A. L. R., 349. Plaintiff contends that his case comes within the purview of Section 3053, Vol. 1, Code 1912 [Act 1892]. The decisions construing and applying that section are reviewed in *Triplett's case* to which we need only refer.

"Plaintiff relies upon the case of *Burnett v. Greenville,* 106 S. C., 255, 91 S. E., 203, Ann. Cas., 1918-C, 363. But that case differs from this, on the facts. There it was admitted that the city council authorized the use of a street as a race track for automobiles in a hill climbing contest, thereby making it dangerous for use by others for ordinary purposes of travel. But here, the allegation is that the street was made dangerous, not by any act or omission of the city council, but by the unauthorized action of the police in violation of an ordinance."

In *Hiott v. Town of Walterboro.* 127 S. C., 251, 119 S. E., 869, it appears that the plaintiff was employed as an assistant in the power house of the Town of Walterboro; that

he was injured by the blowing out of a cylinder head of a steam engine used to produce power with which to operate the electric light plant and waterworks system of the town. He brought action against the town alleging, among other things, that the lighting plant was operated "for lighting and making safe its streets for traveling."

There was a demurrer to the complaint which was overruled; an appeal followed. Mr. Justice Marion for the Supreme Court, said: "We think the demurrer should have been sustained. The enabling statute, above referred to [Act 1892], conferring a right of action for actual damages upon one 'who shall receive bodily injury or damages in his person or property, through a defect in any street, causeway, bridge, or public way, or by reason of defect or mismanagement of anything under control of the corporation within the limits of any town or city,' has been construed by this Court in numerous decisions to limit the liability of the municipality to misfeasance or nonfeasance connected with the keeping any street, causeway, bridge, or public way in proper repair."

Citing the cases of *Dunn v. Barnwell; Hutchison v. Summerville* and *Bryant v. Orangeburg, supra.* Continuing the quotation: "If while engaged in the use of the street, etc., for any legitimate purpose a person sustains injury, through 'a defect' in the street, etc.,  *  *  *  he is entitled to maintain his action against the municipality under the statute."

Citing *Irvine v. Greenwood; Stone v. Florence; Creps v. Columbia; Burnett v. Greenville; Sexton v. Rock Hill; Triplett v. Columbia.* Continuing the quotation: "An employee of the municipality, using the street for the legitimate purpose of repairing the same, injured by a defect in or 'mismanagement of anything,' *such as machinery, etc.* [italics ours], under the control of the municipal corporation, is within the terms of the statute."

Citing *Barksdale v. Laurens, supra; Strait v. Rock Hill,*
104 S. C., 116, 88 S. E., 469. Continuing the quotation:
"But the duty for a breach of which the statute, as hereto-
fore construed and interpreted (see cases above cited), gives
a right of action, is the duty owed by the municipality to
maintain its streets, etc., in a condition of reasonably safe
repair. That duty, manifestly, is owed to the users of the
streets. May one who at the time of his injury is not upon
the streets and is making no use of the streets claim the
benefits of the statute upon the theory that *the work in
which he was engaged was connected with or contributed to
keeping the streets in a state of repair?"*

The learned author of the opinion answers his question in
this wise: "In the light of the prior adjudications of this
Court, construing and applying the enabling statute, and of
the settled rule that municipal corporations in this State are
liable for torts only, when made so by legislative enact-
ment, it follows that appellant's contention that the statute
may not properly be construed to cover liability for the cause
of action here alleged must be sustained."

In the case of *Foster v. City of Union,* 129 S. C., 257,
123 S. E., 839, 841, action was brought against the city
under the enabling statute to recover damages for injuries
received by plaintiff while making repairs, at night on an
automobile situated in a street of the city. The principal al-
legation of negligence charged was that, on one of the poles
placed and maintained at the edge of a nearby public street
and under the control of the city, a wire carrying a very
high voltage current of electricity was in such close prox-
imity to a wire carrying the low current into plaintiff's home
as to be apparently "lying together"; that such condition
was due to faulty construction and created danger to any
one handling the house lights; that the work of repairs on
the automobile, by the aid of the house light, was safely
done until the street lights were turned on and a condition

of unsafety created in the street by the improper management of the high voltage current.

There was an order of nonsuit and an appeal therefrom. The opinion of the Supreme Court, sustaining the order of nonsuit, was written by that learned jurist and legal analyst, Mr. Justice Marion. We quote liberally from it:

"The settled law of this State, upon which that statute, passed in 1892 (21 Stat. 91), was ingrafted, and in the light of which it must be interpreted and applied, is thus clearly stated by appellant's counsel:

" 'The rule was adopted in this jurisdiction at an early period (1820), and has been constantly adhered to in subsequent decisions, that a municipal corporation is a mere governmental agency established for public purposes, and is not liable in a civil action *ex delicto* for damages for injury to person or property substained in consequence of a breach of duty by an act of nonfeasance or misfeasance on the part of its agents or officers, in the absence of a constitutional or statutory provision imposing such liability [citing authorities] and then only upon a substantial compliance with the prescribed requirements and conditions upon which such liability is predicated.' "

. Citing other authorities. The opinion proceeds: "The statute was first construed in the case of *Dunn v. Barnwell,* 43 S. C., 398, 21 S. E., 315, 49 Am. St. Rep., 843."

He then quotes from the opinion in that case the interpretation of the statute given by Mr. Justice McIver, which is set out in this opinion, to the effect that, the term "mismanagement" as used in the act meant mismanagement in making repairs on the streets, so that the corporation should be liable, not only for negligence in making repairs on the streets, but also for mismanagement of anything under control of the corporation *in making such repairs*. (Italics added.) There is nothing whatever in the Act to indicate an intention on the part of the Legislature to make a municipal corporation liable for any other nonfeasance or mis-

feasance on its part except such as was connected with keeping the streets, etc., in proper and safe repair.

Resuming the quotation from Justice Marion's opinion: "That the construction * * * thus adopted has been more or less consistently adhered to in the subsequent decisions of this Court is, as we apprehend, not open to question. The appellant does not, as we understand, contend to the contrary, but seeks to square his contentions in this case with the construction of the statute adopted in *Dunn v. Barnwell, supra,* by force of analogy to certain subsequent decisions of the Court in which a right of action has been accorded litigants in personal injury cases. *But in the absence of an intentional departure, in substance and in principle, from the construction and interpretation of the statute enunciated in Dunn v. Barnwell, we are concerned here with the application of the law as thus settled to the facts of this particular case.* [Italics ours.] A review of the decisions, either for the purpose of squaring the conclusions therein reached with the case of *Dunn v. Barnwell,* or for the purpose of differentiating the facts of more or less analogous cases from those of the case at bar, would therefore serve no useful purpose. The question here presented, we think, is to be resolved in the light of the well-settled propositions embodied in the construction of the statute adopted in *Dunn v. Barnwell,* viz.: (1) That the duty for a breach of which the statute gives a right of action is the duty owed by the municipality to maintain its streets, etc., in a condition of reasonably safe repair (*Hiott v. Town of Walterboro,* 127 S. C., 251,. 119 S. E., 869) ; (2) that such breach of duty may be predicated upon either a defect in the street, etc., or a defect in or mismanagement of anything (within the town limits) under the control of the corporation in making repairs upon streets, etc., from which injury results to any person engaged in a legitimate use of the street, etc.; and (3) that liability is conditioned upon the existence of

actionable negligence as that term is understood and applied in the law of torts."

Here is the direct and authoritative declaration of the Supreme Court that it has returned to and reaffirmed the rule of interpretation and application of the enabling statute of 1892. There are other and subsequent cases to the same effect.

The facts upon which the action was based in the case of *Stewart v. City Council of Charleston,* 134 S. C., 398, 132 S. E., 678, 679, are, briefly stated, these: Plaintiff, an employee of the city, was engaged in work at the bottom of a deep excavation in a street of the city. He was working under the direction of officers of the city. He was injured by the caving in of the sides of the excavation. His complaint alleged that his injuries were caused by the negligence and mismanagement of the defendant in the following particulars: Failure to provide a safe place for plaintiff to do his work on the public street; in failing to provide proper shoring or other safeguards to prevent the sides of the excavation from caving in; in requiring plaintiff to work in a dangerous place without warning him of the danger.

There was a demurrer to the complaint, which was overruled. On appeal the order dismissing the demurrer was reversed. The opinion by Mr. Justice Stabler said: "It is well-settled law in this State that municipal corporations are not liable in tort except as provided by statute. Section 4478 of the Code of Laws of 1922 [the Enabling Act of 1892], under which this action was brought, reads as follows."

Here the provisions of the Act are set out. The conclusion of the Court was thus stated: "It does not appear, however, in the present case from the allegations of the complaint that the plaintiff, an employee of the municipality, was injured by a defect in or mismanagement of anything under the control of the municipal corporation *while engaged in repairing the streets.* [Italics added.] The conclusion of the Court, therefore, is that the allegations of the

complaint do not state a cause of action within the statute, and that the demurrer should have been sustained."

Here again, the Court, since the *Creps case* was decided, announces its adherence to the *Dunn case*.

The facts in the case of *Oswald v. Orangeburg*, 154 S. C., 105, 151 S. E., 230, 232, are singularly like those in the case at bar.

The plaintiff was an employee of the city in its water and light department and its fire department. In the early morning of April 14, 1927, he was called out by the chief of the fire department in response to an alarm of fire. His duties were to assist in extinguishing the fire, keep the streets about the burning building clear of falling material, and clear of obstructions placed in the streets by firemen, and to keep the streets in safe condition for the traveling public and pedestrians. He was ordered by the chief of the fire department to ascend a ladder to fight the fire; when ordered to descend it, and when he got upon it, the foot of the ladder slipped, causing him to fall and sustain serious injuries. His action against the city was laid under the Act of 1892. There was a demurrer to the complaint, which was sustained by the Circuit Judge. On appeal the order sustaining the demurrer was affirmed. Mr. Justice Carter delivering the opinion of this Court, said: "We agree with the conclusion reached by the Circuit Judge. The Courts of this State, as well as the Courts of other jurisdictions, have universally held wherever the question has arisen that a municipality is not liable in damages for a tort committed by any of its officers or agents, unless made so by statute." ·

Here the provisions of the Act of 1892 are set out. Continuing, the opinion said: "In order to maintain an action under * * * this section of the Code it must appear that the injuries complained of, and the damages resulting therefrom, were caused by or through a defect in a street, bridge, causeway or public way, within the limits of the municipality, and caused by the neglect or the mismanage-

ment of the municipality, its officers or agents, or by reason of a defect of anything under the control of the municipality, *used in making repairs in the streets, causeways, bridges, or public ways.* [Italics added.] * * * A careful examination of the complaint fails to convince us that the allegations meet this requirement, and therefore think that his Honor, Judge Mann, was right in sustaining the demurrer and dismissing the complaint."

Again is the rule of the *Dunn case* sustained by a unanimous opinion of the Court, written since the *Creps case* was decided.

Counsel for respondent cite the case of *Walsh v. Dawson Engineering Co.,* 159 S. C., 425, 157 S. E., 447, as authority in favor of their position. We do not think that it may rightly be so applied. The gist of that case is succinctly stated in the second syllabus, thus: "Where street was obstructed with permission of city council, and pedestrian fell over pile of cement and pavement excavated by man working in street, city council's negligence held for jury."

It was a disputed question of fact whether the man doing the excavating in the street was employed by the city or by the contractor.

In *Ancrum v. State Highway Dept.,* 162 S. C., 504, 161 S. E., 98, 99, the action was laid under the Act of 1928 giving a right of action against the highway department under certain conditions. The action was for damages alleged to have been sustained because of defects in a highway and bridge. In order to maintain his action it was necessary for plaintiff, first, to file his claim with the department. He failed to prove that he had done this. Nevertheless, he had a verdict. On appeal Mr. Justice Stabler for this Court said: "This Court has held that an action against the State Highway Department is an action against the State; that the Act of 1928 (35 Stat., 2055), being in derogation of the sovereign power of the State, must be strictly construed; that one seeking to avail himself of the consent of the State

to be sued must fully comply with the prescribed terms and conditions of the statute; and that the filing of a claim as required by the Act is an essential prerequisite to a right of action." Citing authorities.

So we deduce that, in order to hold the municipality liable under the Act of 1892, that Act must be strictly construed, and its terms and conditions strictly complied with; that is to say, it must be shown that the delict complained of must have been due to a defect in the street, etc., or to the defect or mismanagement of something under the control of the municipality, which was connected with the obligation of the municipality to keep its streets in a condition of reasonable safety for the use of those who are entitled to use them legitimately.

The respondent, it is apparent, has brought his action in reliance upon the case of *Creps v. Columbia, supra.* The appellant contends that that case should be overruled as being out of harmony with the established rule of this State.

The writer of this opinion is personally convinced that the opinion in the *Creps case* should be overruled. But, unless the other members of the Court are so inclined, it is not necessary to overrule it in order to decide this case. The facts of this case do not bring it within the established and reiterated rule of the Court. Moreover, the *Creps case,* if it has not been specifically overruled, has been practically held not to be of authoritative force, in numerous decisions rendered by this Court, since the opinion in that case was rendered, which are in conflict with the rule therein declared. The rule of the *Creps case* is in that class described by Mr. Cleveland as a state of "innocuous desuetude."

This is a hard case, a worthy young man has been grievously hurt, while in the performance of a public duty. Naturally one's sympathy is for him. Unfortunately, we, who are charged with declaring the law as it is written, may not permit our sympathies to have sway with us in the perform-

ance of this duty. Mr. Associate Justice Hydrick, in the *Triplett case,* said:

"Where an individual has suffered injury as the result of a wrong done, natural justice calls for some remedy, and the Courts have ever been alert to provide one; hence the boast of the law, which is often pressed upon the attention of Courts, that for every wrong there is a remedy. But there is another axiom of practical wisdom equally important to be observed—*hard cases make bad law.* [Italics added.] Not infrequently the hardship of a particular case leads to the strained, if not incorrect, application of sound principles to fit the facts, so as to afford a remedy; and, when the same principles are invoked in similar cases, it is discovered that they lead to results that are exceedingly inconvenient, if not so illogical that they cannot be justified on settled principles of legal liability.   *   *   *

"The Courts are not invested with the power to make laws. They should and do keep pace with the progress and development of society by the application of settled principles to new relations and conditions, but in doing this the point is sometimes reached when the power of the Court ends and the duty of the legislature begins."

If the State desires to surrender for itself and its subdivisions immunity from suit, beyond the degree in which its sovereignty has been abrogated, it has the proper channel through which to accomplish its purpose, viz.: the legislative branch of the government. Certainly it is wholly without the province of the Courts to extend that immunity.

It is the judgment of this Court that the judgment of the Court below be reversed, and the complaint dismissed, and it is so ordered.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.