17471

R. C. COLLINS, Respondent, v. The CITY OF GREENVILLE, S. C.,
a municipal corporation, Appellant

(105 S. E. (2d) 704)

*W. H. Arnold, Esq.,* of Greenville, *for Appellant,*

*Messrs. Rainey, Fant, Traxler & Horton,* of Greenville, *for Respondent,*

November 5, 1958.

Moss, Justice.

The respondent, R. C. Collins, owns two buildings in the City of Greenville. The appellant, City of Greenville, owns and operates a sewer system in said City of Greenville.

The complaint alleges that on February 13, 1957, the sewer line of the appellant, in Augusta Street, was stopped

up by an accumulation of rags and waste material and that the appellant, in its attempt to remove the rags and waste material causing said obstruction, negligently and carelessly caused the sewage to back up and overflow the commodes in the two buildings owned by the respondent. It is further alleged that as a result of such overflow that the hardwood floors and the carpets thereon were ruined by the sewage. The respondent asks for a judgment against the appellant for such damage.

The appellant demurred to the complaint on the ground that the same did not state facts sufficient to constitute a cause of action, in that it was not liable for any act of negligence unless made so by statute, and that the damage to the respondent did not result from a defect in the street, nor was it liable for any alleged negligence in the repairing of the sewer line.

The demurrer was heard by the Honorable W. B. McGowan, County Judge, who overruled the same on the ground that the facts stated in the complaint allege a cause of action for the taking of the private property of respondent for public use without just compensation. Art. I, Section 17, of the 1895 Constitution of South Carolina.

The case is before this Court upon a proper exception challenging the foregoing ruling. The respondent asserts as a sustaining ground that if this Court should hold that the complaint does not state a cause of action for the taking of private property for public use as prohibited by the Constitution, that the complaint does state a cause of action for a defect in a street, under Section 47-70 of the 1952 Code of Laws of South Carolina.

The questions for consideration by this Court are whether or not the complaint states a cause of action for the taking of private property for public use without compensation as prohibited by the Constitution, Art. 1, section 17; and whether the complaint states a cause of action for a defect in a street, under Section 47-70 of the 1952 Code of Laws of South Carolina.

The Constitution of this State, Art. I, Section 17, provides that:

"* * * Private property shall not be taken * * * for public use without just compensation being first made therefor."

In *Webb v. Greenwood County*, 229 S. C. 267, 92 S. E. (2d) 688, 694, this Court said:

"South Carolina, in its construction of Article I, § 17, Constitution of 1895, does not recognize a distinction between 'taking' and 'damaging,' but holds that a deprivation of the ordinary beneficial use and enjoyment of one's property is equivalent to the taking of it, and is as much a 'taking' as though the property were actually appropriated, citing *Wilson v. Greenville County*, 110 S. C. 321, 96 S. E. 301; *White v. Southern Ry. Co.*, 142 S. C. 284, 140 S. E. 560, 57 A. L. R. 634; *Henderson v. City of Greenwood*, 172 S. C. 16, 172 S. E. 689; *Gasque v. Town of Conway*, 194 S. C. 15, 8 S. E. (2d) 871."

In the case of *Gasque v. Town of Conway*, 194 S. C. 15, 8 S. E. (2d) 871, 873, this Court said:

"The constitutional prohibition against taking private property for public use without just compensation must have been intended to protect all the essential elements of ownership which make property valuable, including, of course, the right of user, and the right of enjoyment. Accordingly, it has been held that the erection and maintenance of a public work or enterprise under lawful authority in such a way as to destroy the beneficial use of adjacent land or property may constitute a taking, although there is no physical invasion of the property itself. This principle is illustrated by such cases as *Kneece v. City of Columbia*, 128 S. C. 375, 123 S. E. 100, which was an action for damages to property, caused by disagreeable odors resulting from the installation of a municipal incinerator; *Derrick v. City of Columbia*, 122 S. C. 29, 114 S. E. 857, damages resulting for improperly maintaining a slaughter house; and *Faust v. Richland Co.*, supra [117 S. C. 251, 109 S. E. 151], where an action was sustained for diverting water on to plaintiff's premises.

"What is a 'taking' of property within the constitutional provision is not always clear; but, so far as general rules are permissible of declaration on the subject, it may be said that there is a taking where the act involves the actual interference with, or the disturbance of, property rights, resulting in injuries which are not merely consequential or incidental. 18 Am. Jur., Sec. 132, Page 750.

\* \* \*

"In the case at bar, the town made no entry of any kind upon the plaintiff's lot. Nor did it subject the land to any burden or easement. All that the town did was to refuse to grant appellant a permit to erect a filling station. In our opinion, by this negative act the defendant did not 'take' or appropriate the plaintiff's property for public use in a constitutional sense. To hold otherwise would be an unjustifiable extension of the meaning of the word, and would go far beyond its plain, natural and usual import. It seems evident that where the town has made no entry on appellant's lot, subjected it to no easement, nor placed it under any servitude, it has not taken the lot nor deprived the appellant of it.

"In addition to this, the Constitution requires that just compensation be paid where private property is taken for public use. The term 'public use' is such a flexible term that the courts have avoided a positive definition lest it prove an embarrassment in subsequent cases and work a mischief in practical application. There is no arbitrary standard by which to determine whether the purpose to which property is appropriated possesses all elements of public utility. The meaning of the term is flexible, and is not confined to what may constitute a public use at any given time. *Riley v. Charleston Union Station Co.,* 71 S. C. 457, 51 S. E. 485, 110 Am. St. Rep. 579.

\* \* \*

"\* \* \* Ordinarily the constitutional provision under consideration contemplates compensation for a 'taking' or for damage which is permanent or presumably of a permanent nature, and growing out of a positive act or aggressive step.

It was never intended to furnish a cause of action for every error of judgment committed or wrongful act perpetrated by a town council."

In *Edens v. City of Columbia,* 228 S. C. 563, 91 S. E. (2d) 280, 282 it was said:

"* * * In still other states the power of eminent domain may be exercised for a public purpose, benefit or the public welfare, as contrasted with the requirement of our constitution that it be for a public use. *Redevelopment Agency, etc. v. Hayes,* 1954, 122 Cal. App. (2d) 777, 266 P. (2d) 105; *Schenck v. City of Pittsburgh,* 1950, 364 Pa. 31, 70 A. (2d) 612; *State ex rel. Bruestle v. Rich,* 1953, 159 Ohio St. 13, 110 N. E. (2d) 778; *Nashville Housing Authority v. City of Nashville,* 1951, 192 Tenn. 103, 237 S. W. (2d) 946; *Velishka v. City of Nashua,* 1954, 99 N. H. 161, 106 A. (2d) 571, 44 A. L. R. (2d) 1406; *Gohld Realty Co. v. City of Hartford,* 1954, 141 Conn. 135, 104 A. (2d) 365, 368. From the last cited we quote:

" ' "In this state it is settled that public use means public usefulness, utility, or advantage, or what is productive of general benefit, so that any appropriating of private property by the state under its right of eminent domain, for purposes of great advantage to the community, is a taking for public use." ' "

In the case of *Edens v. City of Columbia, supra,* there is cited the case of *Healy Lumber Co. v. Morris,* 33 Wash. 490, 74 P. 681, 63 L. R. A. 820, 99 Am. St. Rep. 964, which holds that a public use must be either a use by the public or by some *quasi* public agency, and not simply a use which may incidentally or indirectly promote the public interest or general prosperity.

In *Bookhart v. Central Elec. Power Co-op.,* 219 S. C. 414, 65 S. E. (2d) 781, 788, it is said:

"Appellant attacked in argument the authority of *Boyd v. Winnsboro Granite Co.,* 66 S. C. 433, 45 S. E. 10, and with the criticism we are inclined to agree. However, the state-

ment of the rule there was tempered in the subsequent decision of *Riley v. Charleston Union Station Co., supra,* 71 S. C. 457, 51 S. E. 485, 110 Am. St. Rep. 579, which was a well-considered case, and the apparently generally abandoned theory of 'public benefit' as justifying the exercise of the power of eminent domain was not followed; nor do we need to follow it here, if we were so disposed. Public benefit and public use are not synonymous in the better and more clearly constitutional view. We think that the latter (public use) is necessary for the constitutional exercise of the power of eminent domain."

In the case of *White v. Johnson,* 148 S. C. 488, 146 S. E. 411, 412, the following rule was announced:

"It is well-established law that necessity, as well as public use, must always exist in order to warrant the taking of lands, through condemnation, by a grantee of the power of eminent domain. The delegation of the right to exercise that power carries with it the implied condition that it shall be exercised only to the extent found necessary.

"As to what is meant, in this connection, by the term 'necessity,' we find the following in 20 C. J., at page 630: 'Necessity * * * does not mean an absolute but only a reasonable necessity, such as would combine the greatest benefit to the public with the least inconvenience and expense to the condemning party and property owner consistent with such benefit. * * *' "

We conclude from the foregoing authorities that the complaint does not state a cause of action for the taking of private property for public use without just compensation, as prohibited by the Constitution, Art. I, Section 17, because there was no taking for public use which is permanent or of a permanent nature, and growing out of positive act of the appellant. The complaint reveals that there was a single isolated instance which resulted in damage to the respondent. There was no degree of permanent taking in the constitutional sense nor was there continuity of such over a period of time.

In the case of *Angelle v. State,* 212 La. 1069, 34 So. (2d) 321, 327, 2 A. L. R. (2d) 666, recovery against the State for the negligent tort of State Agents, predicated on the theory of eminent domain, was denied. The action was one by two sweet potato growers and an insurer who had made good a loss to a railroad company against the State and its Department of Agriculture for the value of the sweet potatoes which had been destroyed in a fire resulting from certain spraying operations conducted by agents of the Department of Agriculture as disinfection for weevils of farm produce stored at a railroad station. The complaint alleged numerous acts of negligence as the proximate cause of the fire. The Louisiana Supreme Court, in denying liability, said that recovery could not be predicated on any theory of eminent domain, and held that the damaging of private property by the agents of the State, while engaged in the performance of a governmental function, was not a taking of property for public use and benefit. It was argued on behalf of the owners of the sweet potatoes that the acts of the State agents in connection with a systematic program for the eradication of sweet potato weevils was for a public purpose and that, therefore, it follows that any destruction of private property, though unintentional or unnecessary, is the taking of the property for public use. The Louisiana Supreme Court held:

"In concluding that plaintiffs are not entitled to maintain these actions against the State, we think it apt to remark that to permit plaintiffs' theory to prevail would subject the State to an action for damages in all cases involving injury or destruction of private property resulting from the torts of its agents when acting in an official capacity—thus, effectually repealing the universal rule to the contrary. We reiterate that we cannot perceive how the unintentional destruction of the station and the other property of plaintiffs by the fire was for a public purpose; the mere fact that the fire occurred whilst the agents were engaged in performing a public duty was an incident wholly disconnected with the object of the Department of Agriculture's program."

In *Hughes v. United States,* 230 U. S. 24, 33 S. Ct. 1019, 1020, 57 L. Ed. 1374, 46 L. R. A., N. S., 624, the Supreme Court had for consideration an appeal by the plaintiff from a judgment of the Court of Claims, 47 Ct. Cl. 663, rejecting her action for damages to her plantation resulting from the dynamiting, by a federal officer in an emergency, of a levee along the Mississippi River adjacent to her property. She contended that the United States had taken her property "in the constitutional sense" and consequently, it was amenable to suit in the Court of Claims. The court, after stating the facts, dismissed the contention in the following language:

"We do not stop, however, to further consider the subject, since whatever view be taken of the finding, (Court of Claims) the fact as to the use of dynamite would not in law amount to a taking by the United States, because in any event the mere act, to meet an emergency, of the officer, conceding, under the circumstances stated, that it was a wrongful act, cannot be held to be the act of the United States, and therefore affords no ground in any event for holding that the United States had taken the property for public use."

In the case of *Columbia Basin Orchard v. United States,* 132 F. Supp. 707, 132 Ct. Cl. 445, it was held that in order to constitute a taking of property there must have been intent on the part of the government to appropriate property to public use or deprive the owner of its beneficial use for the benefit of the public. Accidental or negligent impairment of value of property is not a taking, but at most a tort.

In the case of *St. Francis Drainage Dist. v. Austin,* 227 Ark. 167, 296 S. W. (2d) 668, it was held that where a drainage district used poison to kill plants on a drainage ditch right of way and some of the poison drifting through air came in contact with crops on adjoining property, causing damage to such crops, principles of eminent domain are not applicable, since crops were not damaged for public use.

In the case of *Houston v. Town of West Greenville,* 126 S. C. 484, 120 S. E. 236, it appears that the town of West Greenville adopted an Ordinance providing for the perma-

nent closing of a public street leading to the plaintiff's property. The plaintiff brought an action for damages, and for an injunction, upon the theory that his property had been taken for public use without just compensation. Upon appeal to this Court from an order of the lower Court, sustaining a demurrer to the complaint, it was held that the action was maintainable because there was an affirmative act on the part of the city of a permanent nature which was deemed to be for the public benefit or the public advantage.

Under the factual showing made in the complaint in this case, we are not justified in holding that the respondent's property has been taken for public use. The lower Court was in error in holding that the complaint stated a cause of action for the taking of the private property of the respondent for public use without just compensation.

Having held that the complaint does not state a cause of action for the taking of private property for public use without just compensation, it now becomes necessary for us to consider whether the allegations of the complaint are sufficient to state a cause of action for a defect in a street under Section 47-70 of the 1952 Code of Laws of South Carolina.

The foregoing statute provides:

"Any person who shall receive bodily injury or damages in his person or property through a defect in any street, causeway, bridge or public way or by reason of a defect or mismanagement of anything under control of the corporation within the limits of any city or town may recover in an action against such city or town the amount of actual damages sustained by him by reason thereof * * *."

In the case of *Parish v. Town of Yorkville,* 96 S. C. 24, 79 S. E. 635, 636, L. R. A., 1915A, 282, it was said:

"It has been settled by a long line of decisions in this court that an action for damages for tort will not lie against a municipal corporation, unless the corporation is made liable by statute, because such corporation is merely an agent of the state for governmental purposes."

In connection with this question, we refer again to the complaint. It alleges that on February 13, 1957 the sewer line of the appellant was stopped up by an accumulation of rags and waste material therein, and by reason of such stoppage the sewage was caused to overflow through a manhole into Augusta Street, and thereby constituted a defect in said street. It is further alleged that the appellant, in an attempt to repair said defect, and to dislodge the rags and waste material, inserted long rods into the pipe to push such rags and waste material through the pipe, and that they knew, or should have known, it was likely to lodge again in said pipe and cause a further overflow elsewhere. It is then alleged that as a result of the acts of appellant in attempting to dislodge the rags and waste material from the sewer line, that the sewage backed up and overflowed the commodes in the buildings owned by the respondent.

It is readily apparent from the allegations of the complaint, heretofore recited, that the respondent did not suffer any injury while he was using the street for travel. We do not think that the complaint states a cause of action under Section 47-70 of the 1952 Code of Laws of South Carolina.

In 25 Am. Jur., Highways, para. 427, at page 717, it is said:

"While the rule has been frequently stated that the duty imposed is to keep the way reasonably safe for travelers, and that the public authority or individual charged with responsibility is not liable for damages occasioned by defects in highways to persons who are not travelers thereon at the time the injury occurs, the terms 'travel' and 'traveler' are usually construed in their broad and general sense where used in this connection, rather than in a narrow and restricted one, and the duty and consequent liability is extended so as to include all those who rightfully use the highways viatically, and who have occasion to pass over them for the purpose of business, convenience, or pleasure. * * *"

In the case of *Hicks v. City of Columbia,* 225 S. C. 553, 83 S. E. (2d) 199, 201, an action was brought by a minor

against the City of Columbia for injuries sustained as a result of an alleged defect in a swing in a city park. The lower Court sustained a demurrer to the complaint and upon appeal to this Court it was held that the minor could not recover as for a defect in the street. In an opinion by Mr. Justice Taylor, it was held:

"* * * that for one to sustain an action against a municipality under Section 47-70 such injury must arise through a defect in a street, causeway, bridge or public way and that the terms 'defect' or 'mismanagement' of anything under the control of the corporation within the limits of said city or town relate to the maintenance of such street, causeway, bridge or *public way for safe travel.* (Emphasis added.) To hold otherwise would conceivably have the effect of broadening the permissory statute by judicial decree and thereby bring about that which the legislature has within its prerogative not done."

In the recent case of *Floyd v. Town of Lake City,* 231 S. C. 516, 99 S. E. (2d) 181, 184, a pedestrian brought an action against the Town for personal injury sustained when a manhole cover, which was located in a parkway or grass plot between the sidewalk and curb of the street, turned as a pedestrian stepped on it while attempting to enter a parked automobile. The pedestrian recovered a judgment against the town and upon appeal to this Court such judgment was affirmed. Mr. Justice Legge, in an opinion for this Court, affirmed such judgment and said:

"* * * The city's liability under this statute is predicated upon its duty to maintain its streets and other public ways in reasonable repair *for the purpose of travel.* (Emphasis added.) The words 'anything under control of the corporation' do not enlarge the field of liability beyond that purpose; they relate to instrumentalities used in the maintenance and repair of streets for the purposes of travel. *Reeves v. City of Easley,* 167 S. C. 231, 166 S. E. 120; *Abernathy v. City of Columbia,* 213 S. C. 68, 48 S. E. (2d) 585; *Hicks v. City of Columbia,* 225 S. C. 553, 83 S. E. (2d) 199."

In the case of *Abernathy v. City of Columbia,* 213 S. C. 68, 48 S. E. (2d) 585, 588, this Court said:

"Is is seen that appellant has a mistaken conception of the limited liability of a city under section 7345 (now section 47-70) of the Code. It does not extend to wilful or negligent acts of its officers or employees except with reference to the maintenance *of its streets for safe travel* (emphasis added) and under the conditions set forth in the statute. It was settled by the leading case of *Reeves v. City of Easley, supra,* 167 S. C. 231, 166 S. E. 120, that there should be a strict construction of the terms of the statute. The Court may not expand or enlarge its provisions by interpretation; amendment by the legislature is the only proper means to that end. *Triplet v. Columbia,* 111 S. C. 7, 96 S. E. 675, 1 A. L. R. 349."

We could cite numerous other cases where it has been held that it is the duty of the municipality, with respect to the safety of the streets, to keep them reasonably safe for the uses for which they are intended, and for those who travel upon them. We do not deem it necessary to cite further authorities. Since it does not appear that the respondent sustained any injury while he was using the street as a traveler thereon, he cannot recover under Section 47-70 of the 1952 Code of Laws of South Carolina. It affirmatively appears from the complaint that the damage to the respondent was caused by the overflow of the commodes in his place of business and not while he was in any wise using the street.

We conclude that the lower Court was in error in failing to sustain the demurrer of the appellant to the complaint.

We are of opinion that the order appealed from should be reversed and the complaint of the respondent dismissed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.