17559

Mrs. Leo FURR, Respondent, v. CITY OF ROCK HILL, a
Municipal Corporation, Appellant

(109 S. E. (2d) 697)

*Messrs. Spencer & Spencer,* of Rock Hill, *for Appellant,*

*Charles B. Ridley,* Esq., of Rock Hill, *for Respondent,*

*Messrs. Spencer & Spencer,* of Rock Hill, *for Appellant, in Reply,*

July 21, 1959.

Moss, Justice.

This action was instituted by Mrs. Leo Furr, the respondent herein, against the City of Rock Hill, the appellant herein, to recover damages for personal injuries alleged to have been sustained by her as the result of negligence on the part of the appellant in the maintenance of one of its streets. The answer of the City was a denial of the material allegations of the complaint. The appellant also asserts that the place where the respondent was injured was not a street or public way, and therefore, it incurred no liability for said injuries.

The trial of this case, in the Circuit Court, resulted in a verdict for the respondent. At proper stages of the trial the appellant moved for a nonsuit and for the direction of a verdict in its favor. After the rendition of a verdict in favor of the respondent, the appellant made a motion for judgment *non obstante veredicto,* or, in the alternative, for a new trial. All of these motions were denied and this appeal followed.

The exceptions charge the Presiding Judge with error in failing to grant the several motions made by the appellant. We think that we can dispose of this appeal by considering only the exception which asserts the evidence failed to establish that the injuries to the respondent occurred in a street or public way maintained by the appellant.

It is the well settled rule in this jurisdiction that a municipality is a subdivision of the sovereignty of the State and enjoys the immunity of the latter from a suit for tort, except as provided by statute. Section 47-70, of the 1952 Code, provides:

"Any person who shall receive bodily injury or damages in his person or property through a defect in any street, causeway, bridge or public way or by reason of a defect or mismanagement of anything under control of the corporation with the limits of any city or town may recover in an action against such city or town the amount of actual damages sustained by him by reason thereof * * *."

In the case of *Parish v. Town of Yorkville,* 96 S. C. 24, 79 S. E. 635, 636, L. R. A., 1915A, 282, it was said:

"It has been settled by a long line of decisions in this court that an action for damages for tort will not lie against a municipal corporation, unless the corporation is made liable by statute, because such corporation is merely an agent of the state for governmental purposes."

Liability of a municipality, under the above statute, is predicated upon its duty to maintain its streets and other public ways in reasonable repair for the purpose of travel thereon. The words "anything under con-

trol of the corporation" do not enlarge the field of liability beyond that purpose; they relate to instrumentalities used in the maintenance and repair of streets for the purposes of travel. *Reeves v. City of Easley,* 167 S. C. 231, 166 S. E. 120; *Abernathy v. City of Columbia,* 213 S. C. 68, 48 S. E. (2d) 585; *Hicks v. City of Columbia,* 225 S. C. 553, 83 S. E. (2d) 199; *Floyd v. Town of Lake City,* 231 S. C. 516, 99 S. E. (2d) 181 and *Collins v. City of Greenville,* S. C., 233 S. C. 506, 105 S. E. (2d) 704, 710.

In the case of *Collins v. City of Greenville, S. C., supra,* we quoted with approval from 25 Am. Jur., Highways, Section 427, at page 717, the following:

"While the rule has been frequently stated that the duty imposed is to keep the way reasonably safe for travelers, and that the public authority or individual charged with responsibility is not liable for damages occasioned by defects in highways to persons who are not travelers thereon at the time the injury occurs, the terms 'travel' and 'traveler' are usually construed in their broad and general sense where used in this connection, rather than in a narrow and restricted one, and the duty and consequent liability is extended so as to include all those who rightfully use the highways viatically, and who have occasion to pass over them for the purpose of business, convenience, or pleasure. * * *"

The testimony shows that the City of Rock Hill, the appellant herein, owns and maintains a municipal stadium fronting on the eastern side of South York Avenue, and lying between the southern side of West White Street and the northern side of Stadium Street. This stadium is used for the playing of athletic games, and for other public outdoor meetings. On the morning of April 21, 1957, the municipal stadium was being used by the Rock Hill Ministerial Association for Easter Sunrise Services. At the time in question the appellant was engaged in extending its concrete football stadium for a distance of 150 feet to the south, to eliminate a conflict between the baseball and football fields. In order to accomplish the extension of the stadium, it was

necessary to place a high dirt fill to support the proposed new concrete stands. To accomplish the filling in with dirt of the area for the extension, it was necessary to remove the fence running along the north edge of Stadium Street, so that trucks hauling dirt could pass back and forth between Stadium Street and the fill area. At the time of the holding of the Easter Services, the dirt fill was substantially completed, but the construction of the extended concrete stands had not been commenced.

. The respondent desiring to attend the Easter Services went to the municipal stadium and entered from York Avenue by climbing the stairs at the rear to the top of the stands, and, finding no suitable seat at the top of the stands, she returned to York Avenue rather than descend the steps through the stands. The respondent then circled the stands to the south and proposed to enter the bottom of the stands from the Stadium Street end. In crossing the construction area near the northern edge of Stadium Street, the respondent fell and was injured, allegedly as a result of a defect in the surface upon which she was walking, which she contends was negligently permitted without proper warning by the appellant. This brings us to the real question in the case of whether the respondent was injured within or beyond the bounds of Stadium Street. It is the contention of the appellant that the injuries to the respondent occurred beyond the limits of any street or public way, and within the stadium area. The respondent contends that without fault on her part she was injured by an alleged defect in a negligently unmarked street, or public way, where construction work had been in progress by the appellant.

Stadium Street was unpaved at the time of the injury to the respondent. There was a ditch about one foot deep between the traveled portion of Stadium Street and the stadium area. Beyond the ditch was a bank of dirt. No repair or construction work was being done on Stadium Street. We quote from the testimony of the respondent as to where she was when she fell.

"Q. All right, now you weren't walking out in Stadium Street, were you? A. Not in the road, I wasn't.

"Q. You were towards the stadium and beyond the ditch along the edge of Stadium St., were you not? A. Yes, sir."

She further described the place where she was walking as follows:

"Because there was no mud there, and it wasn't wet in no way, shape, or form, but that was just soft dirt that was there, and it looked pretty much like anybody would have stepped along there."

We quote from the testimony of the respondent while she was under cross examination:

"Q. And this was in the area where the trucks were making an extension to the stadium, is that right? A. That is right, Mr. Spencer.

"Q. And that is the area that you were going across when you fell, is that right? A. No, I mean, Yes, why sure. I was thinking about that big fill over there. They said I got out of a car across the road there or in the fill, but I didn't do it."

The respondent also testified that when the ambulance came for her that they had to lift her over the bank of dirt, which was beyond the ditch of Stadium Street, and over in the stadium area. She was asked the question, "So that any work that was going on wasn't in the street, but over in what we call the stadium area, is that right?" To this question, she answered, "That is right."

A number of witnesses testified as to where the respondent was when she fell. One witness describes the place as 6 or 8 feet towards the stadium from the street. Another witness describes the place as 6 or 7 feet across the ditch, which had reference to the ditch along Stadium Street. The Reverend B. F. Hawkins, who was attending the Easter Sunrise Service, described the place where the respondent fell, by saying: "I would say in the vicinity of 10 feet off from where the people walked along the side of the street on the incline." Another witness described the place as being 10 to 15 feet from

Stadium Street. Still another witness says that the respondent was 10 or 12 feet from the ditch on Stadium Street. An attendant, who came with the ambulance, testified as follows:

"Q. Do you remember this little ditch or a pretty good ditch running along Stadium St.? A. Yes, sir.

"Q. In fact you had to lift her across that ditch as you parked your ambulance over here (indicating)? A. Yes, sir.

"Q. She wasn't in that ditch, was she? A. No, sir, she was up the hill from the ditch."

Another witness, a radio announcer, on his way to the stadium to announce the services over the radio, testified as follows:

"Q. Could you say what her location was with reference to the edge of Stadium St.? A. I would say roughly 15 feet.

"Q. Now, was that towards the stadium? A. Yes, sir. She was going towards this general vicinity."

The only reasonable conclusion that can be reached from the evidence is that the respondent received her injury from a fall occurring within the stadium area. There is no testimony that the respondent sustained injury while using any part of Stadium Street, or any other street or public way.

In the case of *Hicks v. City of Columbia*, 225 S. C. 553, 83 S. E. (2d) 199, 201, an action was brought by a minor against the City of Columbia for injuries sustained as a result of an alleged defect in a swing in the city park. A demurrer to the complaint was sustained, and this Court affirmed the lower Court's order. Mr. Justice Taylor, speaking for the Court, said:

"Appellant relies principally upon the cases of *Haithcock v. City of Columbia*, 115 S. C. 29, 104 S. E. 335; *Irvine v. Town of Greenwood*, 89 S. C. 511, 72 S. E. 228, 36 L. R. A., N. S., 363; and *Stone v. City of Florence*, 94 S. C. 375, 78 S. E. 23, to sustain his contention that a public park is encompassed within the definition of the words 'street' and 'public way' within the meaning of the statute; and these

cases do, by implication at least, lend strong support to this position. However, since these cases were decided, this Court has confined the interpretation of the meaning of the words 'by reason of defect or mismanagement of anything under the control of the corporation' as relating to something used to maintain and keep the streets in reasonable repair, for the purpose of safe travel. *Reeves v. City of Easley,* 167 S. C. 231, 166 S. E. 120, and the recent case of *Abernathy v. City of Columbia,* 213 S. C. 68, 48 S. E. (2d) 585.

"It is useless to unduly extend this Opinion as there is no longer any doubt under the *Reeves* and *Abernathy cases, supra,* that for one to sustain an action against a municipality under section 47-70 such injury must arise through a defect in a street, causeway, bridge, or public way and that the terms 'defect' or 'mismanagement' of anything under the control of the corporation within the limits of said city or town relate to the maintenance of such street, causeway, bridge or public way for safe travel. To hold otherwise would conceivably have the effect of broadening the permissory statute by judicial decree and thereby bring about that which the legislature has within its prerogative not done."

If the respondent, while engaged in the use of a street or public way for the legitimate purpose of traveling thereon, had sustained an injury through "a defect" in said street, or "by reason of a defect or mismanagement of anything under control" of the City, she would be entitled to maintain her action against the appellant herein under the statute, but the duty for a breach of which the statute gives a right of action is the duty owed by the municipality to maintain its streets in a condition of reasonably safe repair. That duty is owed to the users of the streets. The respondent here was not injured while she was using a street or public way.

We conclude, after giving the respondent the benefit of every reasonable inference to be drawn from the testimony, that she has failed to show that she received an injury while using a street or public way, but the testimony, on the contrary, shows that she was injured while walking across the

stadium area, which is not encompassed within the definition of the words "street and public way."

The judgment appealed from is reversed and the case remanded for entry of judgment in favor of the appellant.

Reversed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.