## TOWNES v. CITY COUNCIL OF AUGUSTA.

1. NUISANCE—DAMAGES—NONSUIT.—The grantee of the creator of a nuisance is liable for its continuance after notice and demand for its removal, and there being some testimony to show that plaintiffs have been damaged since said demand, nonsuit was error.

2. IBID.—IBID.—EVIDENCE.—Testimony tending to show that plaintiff's land was injured by a nuisance at time of demand of removal, and that it is in same condition, tends to show a continuance of the cause of injury.

3. IBID.—GRANTOR AND GRANTEE—DAMAGES.—The grantee of land affected by a nuisance, not ripened into an easement, may, notwithstanding he purchased with notice, bring an action to abate such nuisance, and for damages.

4. ESTOPPEL—JURY.—When the facts relied on to create an estoppel are admitted, the question is one of law for the Judge; but when such facts are disputed, the question must be submitted to the jury, under proper instructions.

5. IBID.—DEED.—A deed executed under order of Court, for valuable consideration, is not binding as an estoppel on the parties to the case, until the consideration has been paid.

6. IBID.—IBID.—Only parties and their privies can take advantage of an estoppel by deed, by reason of recitals therein.

Before ALDRICH, J., Edgefield. Reversed.

Action by G. W. Townes and H. H. Townes *v.* City Council of Augusta. Upon motion for nonsuit, the Judge made the following remarks:

I shall endeavor as briefly as I can to announce my conclusion upon the several grounds upon which this motion is asked, or as many of them as may be essential to pass upon. 1st. "That the plaintiffs cannot retain the benefit

of any contract, and at the same time be relieved from any
burden or any consequence which flows from the contract."
This case has been before the Supreme Court of this State,
and was there considered, and it granted an order wherein
it was held that the judgment of the Court below was erro-
neous, in that the Court should have granted the motion
made for a nonsuit in that case. It sent the case back to
this Court for a new trial, because it might be that the
plaintiffs would introduce sufficient evidence to sustain the
allegations of their complaint to prevent the penalty of a
nonsuit. I have read over the case, the brief, as prepared
for the Supreme Court, and have also read their decision.
Now, that Court having passed upon this case as presented
on the facts therein contained, and having said the motion
for a nonsuit was proper, and stated the reasons why it was
proper; in that case my duties are circumscribed. It is left
for me to say whether the plaintiffs in this case have sub-
mitted the testimony which, in the opinion of the Supreme
Court, was wanting in the trial of the case at the prior
trial. And before doing so, let me say, in regard to com-
ment of the learned counsel, that the Supreme Court, or
the Judge who wrote the opinion thereof, had inadvertently
overlooked certain testimony contained in the brief. It is
not my province, certainly not my pleasure, and it is very
far from my duty, to assume that the Supreme Court inad-
vertently or otherwise overlooked any material testimony
in the brief; and it affords me pleasure to add, also, that I
can see very plainly how the decision of the Supreme
Court, or of the Justice who wrote the leading opinion,
could be correct, and in exact accord with the language he
used in that opinion. If you will notice that he bases his
decision why the motion for a nonsuit should have been
granted upon the conduct of the plaintiffs after they had
acquired their alleged rights to the land. Now, the letter
of the counsel of plaintiffs to the city council of Augusta,
or its mayor, was a notice, a statement, or you might term
it a demand. The Supreme Court did not rest its decision

upon the declarations or statements of either counsel or the plaintiff, but upon their conduct, and if you view the conduct as contradistinguished to mere talk or statements, the language of the Justice who wrote that opinion would be correct from his standpoint. Now, if that be so (and I must construe the testimony in the light of this decision, because it is directly upon this issue), what have we got here to supply the missing testimony, or the wanting testimony, at the prior trial? We have the statement, the declaration of the plaintiffs, that they have not received any of this money arising from the use of the water power derived from the canal; that they have not accepted it, and that they, on the other hand, to use their word, "repudiated" it, and these gentlemen themselves go on and tell you what they themselves have testified to, what they did; that with their knowledge, with their permission, certainly by their acquiescence, they let their property remain in the hands of their father, and used it and operated it. Well, that was conduct. When they allowed him to remain there by their permissson and acquiescence, his conduct they are responsible for; and if that be true, as I think it cannot be gainsaid, I don't see where there is any more testimony in this case than there was at the previous trial.

Now, I need not state the rule of evidence governing nonsuits, that where there is any testimony to go to the jury that the Judge should refuse the nonsuit; but I think the meaning of that rule is, that wherever there is any legal testimony, any competent testimony, to go to the jury, the Judge should not interfere. But here in this case these gentlemen testified as to what they did, their conduct in the premises, and I do not see that there is any more testimony in this case, as I say, than was at the prior trial. Now, the conduct to which, as I understand the decision of the Supreme Court as referring to, is not what in its usual and general acceptation is termed an estoppel *in pais*. It belongs to that class of conduct which means an acceptance or ratification of the acts of another by receiving the bene-

fits therefrom. In such cases, there is no element in it that the party must induce the other one to act on, or to do anything, or to change his position. A man that sees a certain status of affairs, or certain condition of affairs, which he can reject or not, he has his option; when he accepts the benefit of the condition of affairs, reaps the results or the emoluments resulting therefrom, the rule in such cases is, that he accepts the benefits and takes it along with the burden, he adopts it. Now, the Supreme Court, in this case, had another element to deal with, on which, with all due respect to counsel, I do not think sufficient stress has been laid by any of the counsel. I am now discussing this case from the standpoint that this property was derived from the will of the grand-father, Jones; that Mrs. Townes was the life tenant, and that these plaintiffs, the gentlemen now bringing this action, were the remaindermen, undoubtedly, under the law and under that will. As I caught it, the life tenant under the life estate had an absolute life estate in that, and during her life she could have given permission to anybody to erect that dam there, and it would have been a lawful act on her part. She had the right to do it, and that permission would exist as long as she lived. Now, if she had a life estate, and the remaindermen did not take it through her, but as purchaser under the will of their grand-father, they were then in the case, which often occurs, the remaindermen taking the property as it comes from the life tenant upon the termination of the life estate. In such cases, where the remainderman takes it, accepts it, uses it, utilizes it, or allows it to be done, ordinarily he is held by his conduct to accept the life estate in the condition in which he receives it and accepts it.

Now, there is another view. For that reason, I will have to sustain the first ground of the motion for a nonsuit. But as this case may go back to the Supreme Court, and to the end that it may be adjudicated and all those issues settled, and that we may get a finality of it, there is an independent, separate, and distinct issue which has been brought

into this case which did not exist in that former trial, and upon those issues the Court is asked to grant the nonsuit, and it is my duty to pass upon that. Now, let's assume that Mr. Jones, the grand-father, by his devise conveyed this estate, this land in question, to his daughter for life, and at her death to her children. The testimony here, the record of the Court introduced in evidence by the plaintiffs, shows that after the termination of the life estate, an action where H. H. Townes, as guardian, and these two plaintiffs were parties, was instituted in the Court of Equity, and the very point or gist of that action was the sale of the land in dispute. That Court, with all of these gentlemen parties to it, directed the sale of this particular land, and in pursuance of that decree of Court, which had jurisdiction in the premises, full power to act, this land was sold to Mr. Shaw, and in that deed we find these very significant words: "Together with all and singular the rights, members, hereditaments and appurtenances to the said tract of land and islands belonging or in any wise incident or appertaining, and particularly the water power and water privileges incident or appertaining thereto." Now, what does that mean? Does it mean the right to utilize the water as it flows in the Savannah River adjoining, which it describes as a boundary, or does it mean some power already established? Unless the Court was guilty of tautology—unless this deed repeats and says what was unnecessary—uses unnecessary and meaningless words—that cannot be the construction placed upon the deed, because it reads as follows: "Together with all and singular the rights, members, hereditaments and appurtenances to the said tract of land and the islands belonging." Those words will convey the right to use the water in its natural condition as it existed. Therefore, when he says, "and particularly the water power and water privileges incident or appertaining thereto," it must mean something else than the natural flow of water; it must have been intended to mean something more. This deed was made after that water power was established. The terms

of that deed are broad enough to carry the water power as established and put there by the agreement of Townes, sr., as trustee of his wife. Be that as it may, whether the Court erred or not, the Court had jurisdiction of the matter, and it did sell it. Now, then, afterwards, in 1892, the deed from Shaw back to H. H. Townes, sr., as guardian, conveyed this land that he purchased under the decree of the Court. It says so in terms. What did he buy? He bought the land, "and particularly the water power and water priviliges incident or appertaining thereto," as well as the other rights and hereditaments to the land appertaining. Now, therefore, the rights, members, hereditaments and appurtenances, and particularly the water power and water privileges, passed out of these plaintiffs when that land was sold to Shaw, and it was gone from them, notwithstanding the will of their grand-father, because the Court of Equity had the right to sell this land, to change this investment, or for any other reason it saw proper. When that land was conveyed back to Townes, sr., as guardian, in 1892, it was still in the hands of some one other than the plaintiffs, or it may be it was in his hands as guardian of these plaintiffs, and they had a beneficial interest in it. Certainly, when he conveyed it back in 1894, then the plaintiffs were in of a new title. They were in under the conveyance, and being in under that conveyance, and that conveyance having passed to them the rights, members, hereditaments and appurtenances, and particularly the water power and privileges, and so on, they owned whatever water powers and privileges that Mr. Shaw bought, and 'no more. Therefore, I think upon that ground the motion for a nonsuit must prevail, because that disposes of that branch of the case. There are a number of other grounds here.

The 2d. "Because there is no evidence in this case, not a scintilla of evidence, connecting the city council of Augusta, the defendants, with the grievances of which the

26—52

plaintiff complains." I do not think it is necessary, in the view I have taken of it, to pass upon that at all.

3d. "Because the plaintiffs have shown that they purchased the land affected by the grievances of which they complain many years subsequently to the infliction of the injury, and with full knowledge of existing conditions, to wit: the construction of the dam and the consequences thereof; thereby, under the law, they took the land *cum onere*." That I sustain as good ground for motion for a nonsuit.

4th. "Because the plaintiffs have not only not shown that they have been damaged in any way by any act of the defendant since their purchase; on the contrary, they have shown affirmatively that the lands mentioned in the complaint are in as good condition as they were when the plaintiffs purchased the same, to wit: That the lands are in as good condition as they were in 1892, when H. A. Shaw conveyed the same to Henry H. Townes, as guardian for Henry H. Townes, jr., and Willis G. Townes, and in the same condition as they were when Henry H. Townes conveyed the same to plaintiff in 1894." I sustain that ground as necessary consequence in sustaining the view I expressed in regard to the deed from Shaw to Townes.

5th. "Because the plaintiffs have introduced no testimony whatsoever tending to show that they have in any way been injured by any act of the defendant since the demand made upon the defendant by them, March 6, 1894." I hardly think it necessary to go into a discussion of that. It has been covered by what I have already said in the discussion of the other branches.

Mr. Croft: All parties are desirous for this litigation to be permanently ended, and if your Honor does not object to doing so, I would much prefer you to pass on all the grounds. Your Honor has not ruled on the second.

The Court: The 2d. "Because there is no evidence in this case, not a scintilla of evidence, connecting the city council of Augusta, the defendants, with the grievances of which

the plaintiff complains." I hold he cannot sustain his allegations as to grievances, because he has failed to prove them, and as far as the connection of the city council of Augusta with those grievances is concerned, there was testimony there that the city council of Augusta was operating them. I refuse to sustain it on the second ground.

From this judgment plaintiffs appeal.

*Messrs. Croft & Tillman*, for appellant, cite: *Consideration of deed may be shown by parol:* 12 S. C., 139; 2 Hill, 404. *Official deed passes no title without compliance with bid:* 41 A. D., 439; 14 Ark., 114; 9 Rich. Eq., 396. *Estoppel in pais does not apply to infants:* 2 Gray., 161; 11 L. R. A., 861. *Loose declarations not acted upon do not operate as estoppel:* 87 A. D., 316. *Minors are not estopped from asserting title to land sold by administrator under void order:* 87 A. D., 306; Bol., 573. *Estoppel in pais question of fact:* 86 A. D., 406. *Remaindermen may object to any work or burden put on land during life of life tenant:* 25 S. C., 523; 1 Strob., 130; 39 S. C., 34; 16 S. C., 230; 17 S. C., 54; 14 A. S. R., 632; 46 A. D., 579. *The Court deed to Shaw, and reconveyance by him to Townes, guardian, does not change status of parties:* 37 Am. Dec., 85; 26 L. R. A., 427; 10 Pet., 25; 26 L. R. A., 425; 18 L. R. A., 540; 22 S. C., 545. *Plaintiffs not bound by acquiescence of predecessors:* 5 L. R. A., 210.

*Messrs. Sheppard Bros., Wm. T. Davidson*, and *M. P. Carroll*, contra, cite: *Rule as to confirmation by minor after attaining majority:* 4 McC., 245. *Grantee cannot accept benefits of deed and refuse burden:* 6 Har., 343; 50 Mich., 119; 36 N. E. R., 856; 52 S. W. R., 460; 128 N. Y., 270; 33 Atl. R., 905; 106 Mo., 521. *Party selling land and repurchasing it takes it cum onere:* 15 S. C., 484; 46 S. C., 486. *Land as good as when repurchased, therefore no damages:* 47 S. C., 476. *In some cases parol not admissible to*

*prove consideration of deed:* 44 S. C., 544; 29 S. C., 48; 2 McC., 167; 1 McC., 261, 48, 514.

April 23, 1898. The opinion of the Court was delivered by

MR. JUSTICE JONES. This case has been here once before. 46 S. C., 15. The appeal now is from an order granting a nonsuit. The grounds of the motion for nonsuit, and the reasons of the Circuit Judge for granting the same, may be seen by reference to the remarks of the Circuit Judge thereon, as printed in the official report of this case. The action is to recover damages for maintaining a dam across the Savannah River, whereby the water is raised in the channel of the river, thereby overflowing and watersoaking, and thus rendering unfit for cultivation about twenty acres of plaintiffs' land. The suit is not against the original creator of the alleged nuisance, since it is alleged in the complaint that the Augusta Canal Company built the dam and overflowed plaintiffs' land, but it is against the city council of Augusta, the grantee of said canal company, for the maintenance or continuance of such nuisance. The rule is settled in this State, and by the weight of authority elsewhere, that the grantee of the original creator of a nuisance is liable for continuing the nuisance after notice and demand for its removal. *Leitzey* v. *Water Power Co.*, 47 S. C., 476. See, also, authorities cited in note to *Plumer* v. *Harper*, 14 Am. Dec., 338. In this case, there was evidence to show that plaintiffs gave notice to the defendant and demanded its removal on March 6th, 1894, and again called attention to the matter on March 26th, 1894. The action was commenced May 28th, 1894. The trial was had at spring term, 1897. The testimony introduced by plaintiffs tended to show that, by reason of the maintenance of the dam by defendant, about twenty acres of fertile land belonging to plaintiffs was rendered unfit for cultivation, and that but for the continuance of the dam, these lands would produce thirty-five or forty bushels of corn per acre each year, that

one-third of this would be a fair rental per acre for the land, and the average price of corn was proven. It follows that the nonsuit could not be sustained on this ground.

The fourth ground of nonsuit presented by the defendant, and sustained by the Circuit Court, is likewise untenable. That ground is, substantially, that the plaintiffs have shown affirmatively that the lands mentioned in the complaint are in as good condition as they were when the plaintiffs purchased the same in March, 1894, and that, therefore, plaintiffs have not shown that they have been damaged by any act of defendant. We fail to see how this evidence could subject plaintiffs to a nonsuit. The evidence tended to show that the erection and maintenance of the dam rendered plaintiffs' twenty acres of land unfit for cultivation, its former use. If the lands were shown to be worthless for cultivation in March, 1894, by reason of the dam, it did not impair plaintiffs' evidence to show that the land was still worthless at the time of the trial by reason of the same dam. The evidence tended to show that the *maintenance* of the dam by defendant was the *continuing* cause of the injury.

The third ground of nonsuit sustained by the Circuit Judge is as follows: "Because the plaintiffs have shown that they purchased the land affected by the grievances of which they complain many years subsequently to the infliction of the injury, and with full knowledge of existing conditions, to wit: the construction of the dam and the consequences thereof; thereby, under the law, they took the land *cum onere.*" There might be some merit in this proposition if the plaintiffs had shown that they claimed *under* the defendant, or if plaintiffs' testimony had established that the alleged grievances or nuisance had continued for a time long enough to give defendant an easement to flood the land in question; but the testimony did not even tend to establish either of these conditions. Conceding, for the purpose of discussing this ground of nonsuit, that the plaintiff's title to the premises

is founded alone on the deed by H. H. Townes, guardian, dated March 16th, 1894, and conceding that they had full knowledge of the existence of the alleged nuisance when they took said deed, it by no means follows that they are precluded from claiming damages for a *continuance* of such grievance. The grantee of land affected by a nuisance not ripened into an easement, may, notwithstanding he purchased with notice, bring an action to abate such nuisance, or for damages resulting from its continuance, since, if the grantor could maintain such an action, his grantee could. If the grantor had the right to have the land relieved of the alleged grievances, the grantee succeeds to such right. We do not mean that the tort to the grantor is assignable by him, and that the grantee could maintain an action for damages done to the grantors, but that the grantee succeeds to the grantor's right of property, possession and enjoyment, and that, since every continuance of a nuisance is a fresh or new nuisance, the grantee has unimpaired the remedy to abate or sue for damages accruing to him from such continuance. The proposition contained in this ground of nonsuit is analogous to the view once entertained, that one coming into a neighborhood where a nuisance exists can not complain of such nuisance, but this idea has long ceased to be law. 16 Enc. Law, 934, and authorities cited.

We come now to what we understand is the principal ground upon which the nonsuit was sustained, viz: "That the plaintiffs can not retain the benefit of any contract, and at the same time be relieved from any burden or any consequence which flows from the contract." The defendant, for a defense, relied on a contract made with H. H. Townes, sr., as trustee for Sallie V. Townes, by the Augusta Canal Company, October 18, 1873, and a deed by Townes, as trustee, same date, conveying to said canal company three 36–100 acres of land whereon the abutment of the dam was constructed by said canal company. By said contract, Townes, as trustee for Sallie V. Townes, granted leave for the construction of said dam, and discharged the

said canal company, its successors and assigns, from any
and all damage, &c., that may be caused to said land by the
erection of said dam and the abutment and walls, from over-
flow and in any other manner.   On the other hand, the canal
company stipulated that H. H. Townes, as trustee of Sallie
V. Townes, "shall be allowed to draw from the water of said
canal company to his mill, now erected on said land on said
Savannah River, water equal to thirty horse power, and also
navigation through said canal with his boat to transfer cot-
ton and other produce and supplies to and from the city of
.Augusta free of toll."   In establishing this title to the land
in question, plaintiffs offered evidence to show that said
land was part of a large tract of land willed by John Jones
to Sallie V. Townes for life, with remainder in fee to her
children, the plaintiffs; that, therefore, Sallie V. Townes
had only a life estate in said lands; that she died Septem-
ber 19, 1877.   At the time of the deed and contract by
Townes, as trustee for the life tenant, plaintiffs were infants
of tender years, W. G. Townes having been born April 2d,
1871, and H. H. Townes, jr., having been born September
2, 1872.   The dam is alleged to have been built in 1873 or
1874.   In the former hearing of this case on appeal, 46 S.
C., 36, Mr. Justice Pope, delivering the opinion of the Court,
said: "Now, granting that Henry H. Townes, when he
claimed to act as trustee for his wife, Mrs. Sallie V. Townes,
and made a contract with the Augusta Canal Company,
whereby he stipulated that the said company might build
the dam across the river, and also stipulated for thirty horse
power of water to run his mill, &c., had no legal power to
make such contract so as to bind his wife, or to bind the
plaintiffs.   Mrs. Townes afterwards would have been able
to confirm the unauthorized act of her trustee.   Grant that,
even if she did or did not confirm such conduct of her trustee,
and such a contract could not, of itself, be made to operate
upon the rights of these plaintiffs, who did not receive these
lands through her, but as purchasers under John Jones' will,
yet it was, and is now, in their power to make that contract

effectual. This may be done directly or it may be done indirectly; it might have been by a deed or other solemn contract; again, it might have been done, not by a deed or other solemn contract, but, just as effectually, by *conduct.* When the plaintiffs held on to the benefits under the supposed deed between Henry H. Townes, as trustee of his wife, Sallie V. Townes, and the Augusta Canal Company, by holding fast to the use of the thirty horse power of water power, with which to propel their mill and machinery, furnished by the dam, constructed under such contract, they tied themselves, hand and feet, so to speak. The law wisely says you shall not receive the benefits of a transaction, and at the same time refuse to bear the burdens incident to such a transaction * * * There was was no testimony in the case which showed that these plaintiffs did not still cling to these water privileges, but the testimony was to the contrary. This being so, it was error in the Circuit Judge to refuse the motion for a nonsuit." The other members of the Court concurred in the view that there was error in refusing the motion for nonsuit. It will be noted that in the foregoing opinion the Court's view of the testimony offered by plaintiffs was, that it established that the plaintiffs held on to said water privileges after attaining their majority, with no testimony tending to establish the contrary. In other words, the fact that plaintiffs held on to the water privileges acquired under the contract by Townes, as trustee, was undisputed in the evidence. The plaintiffs were, therefore, liable to be held estopped, as matter of law, from seeking to relieve themselves from the burden of a contract, the overflow of their lands, while holding on to its benefits, the water privilege. An estoppel *in pais* is a mixed question of law and fact. When the facts relied on to create an estoppel are admitted, or undisputed, or ascertained by the proper tribunal, then whether such facts create an estoppel is a question of law for the decision of the Judge; but when the facts relied on to create an estoppel are disputed, then the case must go to the jury, under proper instructions from

the Court as to what constitutes an estoppel, leaving it to
the jury to determine whether the evidence establishes or
not the facts necessary to create an estoppel.   On the trial
now before us, the facts relied on to create an estoppel were
disputed.   The evidence offered by plaintiffs tended to show
that they objected to the use of such water privileges by
their father; that they repudiated the contract made by H.
H. Townes, as trustee; that they had never received a cent
from the use of the water power, &c.; that such use as was
made of the water power by their father, H. H. Townes,
was for his own benefit, and against their objection; that
while they permitted their father to live on and use their
tract of land without accountability, they did not authorize
his use of the water power.   It was error, therefore, to hold,
as matter of law, under such state of the evidence, that
plaintiffs were estopped, and to nonsuit plaintiffs.   The
question of estoppel should have been submitted to the jury,
under proper instructions.   If it was sought to show that
plaintiffs had ratified the contract made by Townes, trustee,
by accepting its fruits after they arrived at the age of ma-
jority, that question, under proper instructions, should have
been submitted to the jury.   If it was sought to show that
H. H. Townes, sr., in using said water power and gin was
acting for plaintiffs, as their agent, after they reached ma-
jority, it would be necessary to show that Townes, sr., was
their agent, and that the use of said gin and water power,
and the receipt of the proceeds thereof, was within the scope
of his agency, and those questions were for the jury, under
proper instructions.

There is another question touching estoppel.   In estab-
lishing their title to the land in question, after proving their
title under the will of John Jones, plaintiffs, antici-
pating defendant's defense, introduced the deed of
Henry H. Townes, sr., as guardian of plaintiffs, to
H. A. Shaw, dated July 8th, 1882; then the deed of H. A.
Shaw back to H. H. Townes, as guardian of plaintiffs, dated
June 21st, 1892, and then the deed of H. H. Townes, as

guardian, to the plaintiffs, dated March 14, 1894, conveying ninety acres of the original tract willed to plaintiffs by John Jones, which ninety acres covered the land injured by the dam. The deed from Townes, guardian, to Shaw purports to be in pursuance of a decree of the Court of Equity in a cause to which the plaintiffs, then infants, were parties, seeking a change of investment in their behalf, and the deed recites the receipt of $1,500 as the consideration. The deed contains these words: "Together with all and singular the rights, members, hereditaments, and appurtenances to the said tract of land and islands belonging or in any wise incident or appertaining, and particularly the water power and water privileges incident or appertaining thereto." The Circuit Judge held that the last clause, "and particularly the water power and water privileges incident or appertaining thereto," conveyed to Shaw the water power and water privileges which was then established under the contract made by Townes, trustee, with the canal company; and that by reason of the conveyance by Shaw to Townes, as guardian, and by Townes, as guardian, to plaintiffs, that plaintiffs were in under a new title, and could claim only such water power and privileges as were conveyed to Shaw, and no more, and on this ground he nonsuited the plaintiffs. In other words, that plaintiffs are estopped by these deeds to claim damages for the overflow of their land by reason of the said dam. If the Circuit Judge is right in this, then he erred in refusing plaintiffs the right to show that the consideration of the deed from Townes, as guardian, to Shaw, was never, in fact, paid, and thereby to show that the order of the Court of Equity had not been complied with; that such deed was void as to the plaintiffs, then infants, and, therefore, no estoppel could arise therefrom against the plaintiffs. Where the Court has made an order of sale, the terms of the order become the law of the case, "the condition on which the authority is to be exercised, the non-performance of which will destroy the power." *Bailey* v. *Bailey*, 9 Rich. Eq., 395. Notwithstanding the Circuit

Judge, when called on to rule, excluded all evidence as to whether the $1,500, as consideration of the deed to Shaw, had been paid, yet the defendant's counsel, on cross-examination of W. G. Harris, at folio 474 of the case, brought out evidence tending to show that the $1,500 had not been paid; and, moreover, there was some testimony to show that H. H. Townes, sr., was all the time, from the date of the deed to Shaw, in 1882, up to the date of the deed from himself, as guardian, to the plaintiffs, in 1884, in possession of said gin and water power, as shown at folio 565 of the "Case" by the following question and answer: Cross-examination of H. H. Townes, sr., by Mr. Sheppard: "Q. All the time after your wife died, and up to the maturity of these boys, you continued the operation of the farm and gin as a public gin? A. Yes, sir." Mrs. Townes died in 1877, and the plaintiffs arrived at maturity, respectively, in 1892 and 1893. So it did not appear in the evidence that Shaw ever had any possession of said gin and water power under said deed. It may have been that possession was never delivered because the consideration was never paid. But, besides this, how could the said water power, as established by the canal company for the benefit of Townes, as trustee, for Sallie V. Townes, his successors and assigns, be appurtenant to the estate of the then infant plaintiffs, when they had not consented, and by reason of tender years of infancy could not consent. It is true, the Court of Equity, on a proper showing, might have taken steps to affirm the contract made by Townes, as trustee, with the canal company, as one to the interests of the infants to continue, but there was no evidence of such proceedings.

But, finally, only parties and their privies can take advantage of an estoppel. 7 Ency. Law, 23. Shaw is not asserting an estoppel against the plaintiffs, nor is Townes, as guardian, by reason of said deeds. The defendant is not privy to the deeds now being considered, and cannot assert an estoppel against plaintiffs by reason of recitals therein.

The order of nonsuit is reversed, and the case is remanded for a new trial.