14186

CHICK SPRINGS WATER COMPANY v. STATE HIGHWAY DEPARTMENT

(183 S. E., 27)

416

*Messrs. W. B. McGowan* and *W. A. Bull,* for appellant,

*Messrs. John M. Daniel, Attorney General, J. Ivey Hum-phrey* and *N. J. Hough, Assistants Attorney General,* and *William C. Wolfe,* for respondent,

December 7, 1935.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

There is but one question involved in this appeal, which is from an order of Judge Featherstone's sustaining a demurrer to the complaint on the ground that the action is *res adjudicata* because of the decision in the case between the same parties reported in 159 S. C., 481, 157 S. E., 842, 846. The history of that case is that the plaintiff brought suit to recover damages for the overflowing of its property by water backed over it by the embankment created by the State Highway Department in constructing and relocating Highway No. 242, between Taylors, in Greenville County, and Spartanburg. The specific charge of negligence was that: "That said culvert was negligently constructed by the defendant in that said culvert was not of sufficient dimensions to drain, carry and discharge the volume of water which could have been anticipated by a study of the country through which the creek runs, by a study of the watershed drained by said creek, and by a study of the volume of water carried by said creek during the freshets which had existed before the culvert was built. That a proper study of said situation would have revealed clearly the fact that the culvert as constructed was not of sufficient dimensions to carry off freshet waters which flowed through the creek from time to time, which fact was known to defendant, or by the exercise of ordinary care could have been ascertained by said defendant at the time said culvert was constructed. That at the time of the construction of said culvert by defendant as aforesaid, the engineers of the defendant in charge of the job were informed by various parties that said culvert was not of sufficient dimensions to meet the demands it would be subjected to, and protest was made to said engineers against the construction of said culvert according to the size and dimensions which were used in this construction."

The complaint further alleges that on or about the 26th of September, 1929, there was an unusually heavy rainfall

which could not be carried off because the culvert constructed by the Highway Department was so negligently and improperly constructed that it was wholly inefficient for the purpose for which it was constructed. There follows the allegations showing the damage done. The plaintiff claimed the right to recover under the provisions of the Constitution of South Carolina and that of the United States that private property shall not be taken for a public use without just compensation being made therefor (Const. S. C., Art. 1 § 17; Const. U. S., Amend. 5).

The Highway Department demurred to the complaint, which demurrer was sustained by the Circuit Judge on the ground that the only statute permitting such suit was that of 1928 (Act March 10, 1928, 35 St. at Large, p. 2055), and the plaintiff had not alleged the necessary facts to bring it within that statute. On appeal this order was reversed, the Supreme Court saying: "The Act of 1928 is not applicable. The authorities are unanimous that the flooding and injuring of property by the negligent impounding of a natural water course is a 'taking' under the constitutional provision."

The Court further held that the named provision of the Constitution is self-executing and does not need the aid of legislation to make it applicable in such cases.

The case went back for trial, and the defendant filed its answer denying that it was negligent in the construction of the culvert, and further that the rainfall of September 26, 1929, was of such unprecedented intensity and volume as to create an act of God which the defendant could not have anticipated or guarded against.

The jury found for the defendant, and there was no appeal from that judgment.

Immediately after the termination of that case, the plaintiff, in writing, served notice on the defendant that it demanded that the latter enlarge the culvert, and, if it failed to do so, it would hold defendant liable for all damages resulting from water being impounded by that embankment

in the future. Nothing was done by the defendant there-about.

In August, 1934, there was another heavy rainfall in the immediate vicinity of plaintiff's property, and again the waters were impounded on plaintiff's property to its great damage and plaintiff's consequent loss.

Thereupon plaintiff brought the present action alleging that its damages were due to defendant's neglect to enlarge the culvert after notice and demand that it be done, and after experience and notice by the rainfall of 1929, that the culvert was unable to drain and carry off the freshet waters of the creek at such times.

Anticipating that the defendant would interpose the plea of *res adjudicata* plaintiff purposely pleaded such matters relating to the former action as are set out in the present complaint.

Defendant did demur on that ground, and the demurrer was sustained by the order now appealed from.

The sole question we need to consider is, Is this action barred because of the decision of the former case?

What is necessary to sustain the plea of *res adjudicata* is well understood in this jurisdiction. Since the case of *Hart v. Bates,* 17 S. C., 35, affirmed and discussed in *Johnson-Crews Co. v. Folk,* 118 S. C., 470, 111 S. E., 15, the doctrine there stated is accepted to be as follows: "The essential elements of *res adjudicata* are identity of the parties, identity of the subject-matter, and an adjudication in the former suit of the precise question sought to be raised in the second suit."

With that definition of the doctrine there can be no cavil. It is the application of it that gives pause.

It must be conceded that the parties in this action are identical with those in the former action. Are the "cause of the action" and the "subject of the action" the same thing? These matters are thus defined in the case of *Ophuls & Hill v. Carolina Ice & Fuel Co.,* 160 S. C., 441, 158 S. E., 824, 827:

"Many attempts to differentiate the meaning of the terms 'cause of action' and 'subject of action' occur in the law books. None of them more clearly states that difference than does Bliss on Code Pleading (3rd Ed.) 214, quoted with approval in our case of *Columbia National Bank v. Rizer*, 153 S. C., 43, at page 55, 150 S. E., 316, 320, 68 A. L. R., 443: *'The cause of action* has been described as being a legal wrong threatened or committed against the complaining party; and *the object of the action* is to prevent or redress the wrong by obtaining some legal relief. *The subject of the action* is, clearly, neither of these; it is not the wrong which gives the plaintiff the right to ask the interposition of the Court, nor is it that which the Court is asked to do for him, but it must be *the matter or thing, differing both from the wrong and the relief, in regard to which the controversy has arisen, concerning which the wrong has been done; and this is, ordinarily, the property, or the contract and its subject-matter,* or other thing involved in the dispute.' (Italics added by us.)

"Another clear and succinct definition of the words 'subject of the action' is found in the case *Humbert v. Brisbane*, 25 S. C., 506; we quote: 'Exactly what is meant by the words, "subject of the action," as used in the code does not seem to be very clearly defined in any judicial decision which has come under our notice. Mr. Pomeroy, who is regarded as a standard authority in the construction of the code, in his valuable work on Remedies, at page 800, Section 775, after stating some of the different constructions which have been placed upon these words, uses this language: "It would, as it seems to me, be correct to say in all cases, legal or equitable, that the 'subject of the action' is the plaintiff's main primary right which has been broken, and by means of whose breach a remedial right arises." ' "

In the first action the cause of action was the legal wrong done by the overflow of plaintiff's lands by water impounded from the rain of 1929. The subject of the action was the negligent construction of the culvert.

In the present action the cause of action is the damage done by the overflow of plaintiff's property by the impounded waters of the rain of 1934, and the subject of the action is not the original negligence in the construction of the culvert, but the negligent refusal to enlarge the culvert after written warning, and after defendant had practical demonstration that the culvert was too small to carry off the overflow waters. One can understand how in the first case the defendant could say the culvert was constructed according to good engineering rules and experience, and that defendant had no knowledge of, nor experience with, conditions in that section, and hence there was no negligence. But the defendant knows now from actual observation and experience that the physical and natural conditions are such at that place that, in the event of unusual falls of rain, that culvert will not carry off the water, but will impound it and force it back on adjacent lands to their injury. It was its duty, in the light of this experience to take proper steps to see that this culvert was enlarged to the proper size; but, in spite of written notice and demands, it negligently failed to do anything about it. This was not the original subject of the action—the negligence in the construction of the culvert; it was the subsequent negligence in refusing and failing to remedy the defect which actual and natural events demonstrated existed in the culvert.

In the consideration of the doctrine of *res adjudicata* involved in the case of *Johnston-Crews Co. v. Folk, supra,* the cited case of *Whaley v. Stevens,* 21 S. C., 221, is considered.

That was an action for obstructing a right of way. Plaintiff claimed a right of way in gross. The evidence pointed to a right of way appendant and appurtenant. The complaint was dismissed, and plaintiff brought a second action alleging that he was entitled to a right of way appurtenant and appendant. The defendant set up the plea of *res adjudicata,* and was sustained by the Circuit Court, but this was

reversed by the Supreme Court, which said: "It is very manifest that the allegations in the complaints filed in the two actions were essentially different, and, as we think, it is equally manifest that the issues presented in the two actions were entirely different. It is true that the general object in both of the actions was the same; that is, to obtain damages for the same obstruction of what appears from the evidence to be substantially the same road, and an order of injunction to restrain defendant from continuing said obstruction. But to obtain the relief sought by the plaintiff, he was bound to establish the affirmative of two issues: First, whether he was entitled to a right of way, as alleged in his complaint; second, whether defendant had obstructed said way. Now, conceding that the second issue was the same in both of the cases, the first issue was certainly not. For, as this Court held in the former case, the sole issue presented was whether the plaintiff is entitled to a right of way in gross over the land of defendant, while the issue presented in the present action is whether the plaintiff is entitled to a right of way appendant or appurtenant to his plantation known as 'Caneslatch.' "

We copy liberally from the brief of appellant, as follows:

From *Gulf, C. & S. F. Ry. Co. v. McGowan*, 73 Tex., 355, 11 S. W., 336, 337: "Without undertaking to say that this rule should be applied in all cases, we do not hestitate to say that it is a proper one to apply in cases of the character of the one before us. It was required of the defendant to so construct its road, when built, as to meet the demands upon it as far as they could be then foreseen and provided for. If it negligently or unskillfully failed to do that, it was liable; but, on the other hand, if the evidence showed that, as the conditions existed, and could have been by the exercise of ordinary care and skill ascertained, at the time the culverts were constructed, they were then made sufficient, and, if nothing had occurred between their construction and the date of the injury to plaintiff to develop their insufficiency, the defendant would not be responsible, not-

withstanding they were in fact insufficient, as then, for the first time, developed, and notwithstanding such insufficiency in fact was acknowledged by the defendant, as then ascertained, by changing and enlarging them. *Though constructed so carefully originally as to exempt defendant from liability, if subsequent developments proved them insufficient, it would then become the duty of defendant to improve them; failing in which, the original construction would not be a defense against an injury occurring after the defect became known. The act of improvement or reconstruction we think affects the future, and not the past."* (Italics ours.)

From page 9 of the brief from *Jones v. Seaboard Air Line Ry. Co.,* 67 S. C., 181, 45 S. E., 188, 193, we take: " 'Although the railroad company constructed its piers and bridge prudently and in a scientific manner, yet, if the testimony satisfies your minds that it subsequently appeared that the construction was such that damages would result from the bridge and piers, and the railroad company could have averted this damage by reasonable effort, nevertheless failed to do so, it would, in my opinion, be liable.' This obligation flows from the duty imposed upon all to so use their own property as not to injure others. *Even with the exercise of the utmost care and skill in the construction of bridges, culverts, dams, and drains, great mistakes may be and are sometimes made, by reason of which unexpected injury results to others. In such a case it is fair and just that those who make the mistake should be required, after it has become manifest, to use reasonable care and skill to prevent its consequences falling on others, especially when they were only required to use reasonable care and skill in the construction."* (Italics ours.)

From page 8 of the brief, taken from the case of *Missouri, K. & T. Ry. Co. v. Johnson,* 34 Okl., 582, 126 P., 567, 569: "The first qestion raised—i e., the insufficiency of the evidence—cannot be sustained. We may assume that all the proof shows that this flood in October was unusual and unprecedented in the history of this river. We may

go further, and concede that, when the railroad embankment and bridge were erected in 1903-04, they were erected skillfully and sufficiently to meet the flood conditions of the river, then known, as well as those that might be at that time reasonably anticipated. *If this is admitted, then, if nothing had occurred since the original construction of the road to demonstrate the insufficiency of the construction prior to the October flood, defendant would have been entitled to an instructed verdict. If, however, after the original construction of the road, and prior to the flood in question here, other floods of an unprecedent character came, demonstrating the faulty construction of the roadbed, or the inadequacy of the waterway left under the bridge, then, if such was the case, a new standard of obligation was erected for the defendant, and it was its duty to meet the new conditions thus established.*" (Italics ours.)

In the able opinion of Mr. Justice Stabler in the case of *Conestee Mills v. City of Greenville,* 160 S. C., 10, 158 S. E. 113, 75 A. L. R., 519, this is stated in syllabus 9:

"Lower riparian owner, though purchasing after city's installation of sewerage system authorized by law, could recover for injuries, after purchase of land, from pollution of stream by discharge of untreated sewerage thereinto (Act. Dec. 22, 1891 [20 Stat. at Large, 1370]).

"This was so, as against contention that original emptying of raw sewerage into river was pollution and constituted immediate 'taking,' and that plaintiff landowner purchased land burdened with injury from such discharge, and therefore could not maintain action, right of recovery being in predecessor which owned land at time of such original 'taking.' Contention was without merit, since, though construction and maintenance of sewerage system was authorized by law, operation thereof in negligent manner so as to pollute stream and injure lower riparian owner's land was not thus authorized,, and such nuisance was abatable; hence new action would lie for each separate injury."

It is a fundamental principle of the common law that, where there is a wrong, there must be a remedy. It is inconceivable that plaintiff should have no remedy for the wrong and damage done him by the waters impounded and cast upon his land in 1934 through the negligence of defendant in neglecting to enlarge its culvert because the jury held defendant not liable for damages for the rain of 1929. It is a fair and logical inference that defendant was acquitted of liability on the theory that, until the unprecedented rain of 1929 came, it had no means of knowing that the culvert was insufficient to carry off the water. But the defendant did know it after that time, and, in spite of warning, took no steps to prevent a recurrence of the disaster. Shall it be allowed to continue for years, indefinitely, to shield itself behind the plea of *res adjudicata,* when a proper enlargement of its culvert will carry off the waters of heavy rainfall, and the valuable property of adjacent owners will be protected?

It is settled that such an injury is a "taking" within the purview of the constitutional provisions.

We think the doctrine of *res adjudicata* does not apply under the allegations of the complaint in this case.

The order appealed from is reversed, and the case is remanded for trial.

MESSRS. JUSTICES CARTER, BAKER and FISHBURNE concur.

MR. CHIEF JUSTICE STABLER (dissenting) :

I think that Judge Featherstone's order, which will be reported, should be affirmed. In addition to the authorities cited, see *Conner v. City of Spencer* (W. Va.), 176 S. E., 858.