17824

Park R. OWENS, Respondent, v. SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Appellant

(121 S. E. (2d) 240)

*Messrs. Daniel R. McLeod, Attorney General,* and *Julian L. Johnson, Assistant Attorney General,* of Columbia, and *Suggs & McCutcheon,* of Conway, *for Appellant,*

*H. T. Abbott, Esq.*, of Conway, *for Respondent,*

August 15, 1961.

Moss, Justice.

Park R. Owens, the respondent herein, instituted this action seeking to recover from the South Carolina State Highway Department, the appellant herein, for damage to his farm land in Horry County, South Carolina, alleged to have been caused by the negligence of the appellant in the construction and relocation of a part of Highway No. 707.

The respondent is the owner of a tract of farm land located near the City of Myrtle Beach and the Myrtle Beach Army Air Force Base; the said farm being situated on the northeastern side of said Air Force Base and between U. S. Highway No. 501, this being the dual lane highway from Conway to Myrtle Beach, and the old highway from Conway via Socastee to Myrtle Beach, designated as Highway No. 707. A portion of the old Highway No. 707, between Socastee and Myrtle Beach, was located in close proximity to the Air Force Base property owned by the United States

Government. Some time prior to the year 1955, the United States Government decided to reactivate the Air Base at Myrtle Beach and in connection therewith desired to lengthen or extend the existing aircraft runways. This proposed extension of the runways would embrace a portion of old Highway No. 707. The appellant refused to close this portion of the highway, even though request therefor was made by the United States Government. It appears that the City of Myrtle Beach was vitally interested in the reactivation of the Air Base and was willing to assist in any way possible in bringing about this desired result. After the route for the relocation of the said highway was made, with the apparent approval of the appellant, the City of Myrtle Beach obtained, in its name, rights of way seventy-five feet in width, including one from the respondent. The relocated part of Highway No. 707 would bypass the Air Force Base property and connect the old Highway No. 707 with the dual lane Highway No. 501 at a point just south of the city limits of Myrtle Beach.

It is undisputed that the plans and specifications for the construction of the relocated highway were prepared by the Corps of Engineers of the United States Government. The road was actually constructed under a contract made by the United States Corps of Engineers with Ray Construction Company of Charlotte, North Carolina, and the contract price for such construction was paid by the Department of Defense of the Government. One of the engineers of the government supervised this road construction along with other construction work being done at the Air Base. When the initial construction of the relocated road was completed in August, 1955, it was tendered to the appellant so that the portion of the old highway could be closed in order to extend the aircraft runways at the Air Base. The appellant refused to accept the road because the pavement surface thereof was too rough. Thereafter, the Corps of Engineers let another contract and overlaid the original pavement surface with a new surface. After the resurfacing of said road, the appellant

did, on June 8, 1956, accept the reconstructed highway from the Corps of Engineers of the Government and took over such for maintenance.

The complaint of the respondent alleges, *inter alia,* that the appellant located Highway No. 707, connecting such with U. S. Highway No. 501, and constructed the said road over property of the respondent; that in constructing this said road, the appellant filled in a roadbed, the level of which was five to six feet above the respondent's property; that ditches were cut along each side of this embankment or roadbed for the purpose of carrying off water from the highway; that the appellant was negligent in the construction of these ditches in that they were not of sufficient width or depth to drain and carry away the water which the construction of the roadbed caused to be impounded along the sides of said highway. It is further alleged that by reason of the negligence of the appellant in failing to construct adequate ditches sufficient in depth and width to carry off the water, which the elevated roadbed caused to collect on the sides of the highway, that the impounded water was cast over and upon the respondent's property in great volume, causing his property to be completely inundated, and not only destroying the crops upon said lands, but caused the farm land to be unfit for cultivation. It was further alleged that in constructing the raised roadbed through the respondent's land, the natural flow of surface water was obstructed, and because of the negligent failure to construct adequate drainage ditches, the said water was impounded on said land rendering the same useless, unfit for cultivation, and permanently damaging the same. It was further alleged that when the appellant constructed relocated Highway No. 707, it failed to provide proper drainage for the surface water cast off of U. S. No. 501, and such water was carried down the side of said Highway No. 707 and was emptied into and upon the land of the respondent. It is further alleged that since the relocation and construction of Highway No. 707, the respondent has had

several crops totally destroyed by the water which had been cast upon his property by the negligent acts of the appellant.

The appellant, by way of answer, denies that it at any time located or constructed the road in question which traverses the respondent's property. It alleges that the said highway was located and constructed by the United States Corps of Engineers and, following said construction, it accepted the said road for the sole purpose of maintenance thereof for the use and convenience of the traveling public. The appellant further alleges that its responsibility in connection with relocated Highway No. 707 is limited only to the maintenance thereof, and that the appellant has no title whatsoever to the said highway, its roadbed, or any of the rights of way pertaining thereto. As a further defense, the appellant alleges that the said highway was properly and adequately constructed and improved under plans and specifications prepared by the United States Corps of Engineers, and that said highway has been provided, within the right of way, with adequate ditches and facilities for the proper drainage thereof. The appellant specifically denies that it has impounded water upon the property of the respondent or changed the natural drainage conditions in any manner, but if the property of the respondent has been damaged, such was caused by the low elevation of the said land and the natural accumulation of water from said property and the lands of surrounding property owners.

This case came on for trial before the Honorable C. M. Epps, and a jury, at the 1960 May term of the Civil Court of Horry County, and resulted in a verdict in favor of the respondent for actual damages.

At the close of the testimony in behalf of the respondent, the appellant made a motion for a nonsuit upon the ground that the respondent had failed to establish any actionable negligence, either of omission or commission, insofar as the construction of this highway was concerned. The appellant also moved to strike out any testimony with reference to any

issue of maintenance insofar as the appellant was concerned. The motion for a nonsuit was refused but during the argument of such motion counsel for the respondent asserted that the action was one in tort founded on the negligence in the construction of the said highway. The trial Judge, in refusing the motion for a nonsuit, ruled that the action could not be maintained in tort and "The only way I see that this case could be maintained would be under the theory of taking of the property". With reference to the question of maintenance, counsel for the respondent stated, "Our testimony hasn't been directed at maintenance", and the trial Judge ruled, "We will limit it to the construction of it."

At the conclusion of all of the testimony, the appellant made a motion for a directed verdict upon the grounds (1) That the testimony adduced by the respondent failed to establish any actionable negligence upon the part of the appellant; (2) That there was no evidence to establish any connection between the appellant and the construction of said highway; and (3) That the said roadway was constructed by the Corps of Engineers of the United States Government, and the subsequent acceptance of the road, by the appellant, which it neither constructed nor supervised during construction, would not render it liable to the respondent. This motion was refused.

During the course of the charge of the trial Judge to the jury an instruction was given that this case was based upon the provision of Article I, Section 17, of the 1895 Constitution of this State, that private property shall not be taken for public use without just compensation being first made therefor. He submitted to the jury the question of whether the appellant had "taken" the property of the respondent by the negligent construction of the roadbed and ditches. He also submitted as a question of fact for the determination of the jury whether or not the appellant constructed or took part in the construction of said roadway, and if the jury concluded that the appellant constructed or took part in the construction of said highway, and such was negligently done,

then the appellant would be liable to the respondent for damage to said property.

· After a verdict had been rendered in favor of the respondent, the appellant made a motion for judgment *non obstante veredicto* and, in the alternative, for a new trial, asserting that the trial Judge committed error in refusing its motion for a nonsuit and a directed verdict upon the grounds, (1) That the respondent failed to establish any actionable negligence or any taking upon the part of the appellant in connection with the construction of the said highway, its ditches and appurtenances, or any acts on the part of the appellant resulting in damage to the land of the respondent as alleged in the complaint; (2) That the evidence fails to establish that the appellant constructed the said highway or performed any acts which caused damage to the land of the respondent or resulted in a taking thereof; (3) That the only inference to be drawn from the evidence is that the appellant had nothing whatever to do with the construction of said highway in question and was not liable for any negligent construction thereof; (4) That the only inference to be drawn from the evidence is that the highway in question was constructed by the Corps of Engineers of the United States Government, pursuant to plans and specifications prepared by such engineers, and that any damage to the land of the respondent by reason of defective construction resulting in a taking thereof, did not impose any liability upon the appellant; and (5) That the appellant is not liable to the respondent by reason of its acceptance, for maintenance, of the highway in question, since it had been designed and constructed by the Corps of Engineers of the Government. This motion was refused and an appeal to this Court followed.

The exceptions of the appellant raise the question of whether the evidence shows the doing of any acts by it which constitutes a taking of the property of the respondent within the purview of Article I, Section 17 of the 1895 Constitution of this State. Stating the question differently, should the trial Judge have ruled that there was insufficient

evidence of any acts on the part of the appellant, in connection with the construction of the highway in question, which caused damage to or the taking of the land of the respondent?

The Constitution of this State, Article I, Section 17, provides, that "* * * private property shall not be taken * * * for public use without just compensation being first made therefor." In the construction of this Article of our Constitution, we do not recognize a distinction between "taking" and "damaging". A deprivation of the ordinary beneficial use and enjoyment of one's property is equivalent to the taking of it, and is as much a "taking" as though the property was actually appropriated. *Webb v. Greenwood County*, 229 S. C. 267, 92 S. E. (2d) 688; *Early et al. v. South Carolina Public Service Authority*, 228 S. C. 392, 90 S. E. (2d) 472; *Chick Springs Water Company v. State Highway Department*, 159 S. C. 481, 157 S. E. 842 and *Milhous v. State Highway Department*, 194 S. C. 33, 8 S. E. (2d) 852, 128 A. L. R. 1186.

The constitutional prohibition against taking private property for public use without just compensation must have been intended to protect all the essential elements of ownership which makes property valuable, including the right of user and enjoyment. Accordingly, it has been held that the erection and maintenance of a public work under lawful authority in such a way as to destroy the beneficial use of adjacent land or property may constitute a taking, although there is no physical invasion of the property itself. *Gasque v. Town of Conway*, 194 S. C. 15, 8 S. E. (2d) 871, and *Collins v. City of Greenville, South Carolina*, 233 S. C. 506, 105 S. E. (2d) 704. This principle is illustrated by the case of *Faust v. Richland County*, 117 S. C. 251, 109 S. E. 151, where an action was sustained for diverting water onto plaintiff's premises.

We have also held that the flooding and injuring of property by the negligent impounding of a natural watercourse is a "taking" under the constitutional provision. *Chick*

*Springs Water Company v. State Highway Department, supra; Taylor v. Lexington Water Power Co.,* 165 S. C. 120, 163 S. E. 137; *Rice Hope Plantation v. South Carolina Public Service Authority,* 216 S. C. 500, 59 S. E. (2d) 132. However, in the case of *Baynham v. State Highway Department of S. C.,* 181 S. C. 435, 187 S. E. 528, it was held that the provision of Article I, Section 17, is self-executing, and that an action at law would lie to recover just compensation for private property taken for public use, in advance of legislation providing therefor, and it was stated that the authorities were in agreement that the flooding and injuring of property by the negligent impounding of a natural watercourse is a "taking" under the constitutional provision; but the opinion in the cited case refers to *Sheriff v. City of Easley,* 178 S. C. 504, 183 S. E. 311, 316, where the issue of negligence on the part of the defendant in the alleged taking by it was fairly presented by the appeal. The Court said:

"We hold that in an action against a municipal corporation under Article I, Section 17, of the Constitution, for the taking of private property for public use without compensation, it is not necessary to allege or offer proof that such municipal corporation has negligently established, maintained, or operated that which has caused damages amounting to a taking, and that if there has been a taking without compensation, and a denial of the right of compensation, it is immaterial if the taking was due to the negligence of such municipal corporation; otherwise there could easily be cases of a taking without compensation, and the one whose property has been taken would be without remedy or redress if such municipal corporation was not guilty of negligence and denied the right of compensation."

This action, as originally instituted, was characterized by the respondent's counsel as one in tort, based on negligence in the construction of the highway. However, the trial Judge ruled that the action could not be maintained as one in tort but could be brought for a "taking" of respondent's property. There was no objection made

to this ruling and we will consider the case as one being properly brought for damages for the taking of property under Article I, Section 17, of the Constitution. However, the respondent is limited to show a taking by the construction of the highway because he has abandoned any claim of taking by "maintenance". The burden of proof was upon the respondent to show that the appellant constructed the highway in question in such a manner so as to cause the impounding of waters and the casting of such upon his property, bringing about the damaging or taking of such. A review of the record convinces us that there was evidence that waters were impounded by the construction of the highway in question and such flooded respondent's land because of the inadequacy of the drainage ditches along the sides of the said highway.

We must now examine the evidence to determine if there is such to connect the appellant with the construction of the highway and ditches so as to render it liable to the respondent for a "taking" or "damaging" of his property.

The record shows that the plat for the relocation of the road in question was made on December 24, 1954, by T. M. Jordan and R. M. Bellamy, Civil Engineers, neither of whom had any connection with the appellant. The location survey of the highway was made by the appellant at the request of and for the Corps of Engineers, and for which the appellant was paid. The rights of way for the said highway, including one from the respondent, were made to the City of Myrtle Beach, such rights of way being obtained by representatives of the City of Myrtle Beach who had no connection with the appellant.

The testimony conclusively establishes that the plans and specifications for the highway and the design for the construction, including the drainage ditches, were prepared by the United States Corps of Engineers. The contract for construction and the letting of same was handled by the United States Corps of Engineers and the appellant

had nothing to do with it. The construction of the road and ditches was done by Ray Construction Company under a contract with the Corps of Engineers. The supervision of the construction of said highway and ditches was performed entirely by the Corps of Engineers, a Colonel Baiden being in charge. The entire cost of the construction of the highway was borne by the Department of Defense of the Government. The appellant did not pay the United States Government any sum for the said highway.

There is an absence of any evidence indicating that the appellant employed the Corps of Engineers to construct this highway or contracted in any way for the construction of same. There is an absence of any evidence that the Corps of Engineers acted as agent of the appellant in the construction of the highway. We think the evidence is conclusive that the only thing that the appellant ever did in connection with the construction of this highway was to make a survey for the suggested relocation of said highway according to a plat thereof prepared by Civil Engineers in the employ of the City of Myrtle Beach, and to inspect the highway subsequent to the completion thereof, with a view to taking it over for maintenance. The location survey had nothing whatever to do with the respondent's alleged damage or with the construction of the highway and ditches. Certainly, the inspection for the purpose of taking over the road for maintenance only had nothing to do with the damage to respondent's land.

The respondent directs our attention to certain testimony given by R. V. Royall, an engineer with the United States Government. On cross examination this witness was asked, "Q. Then, in effect, you built it for the State Highway Department? A. Because the United States Government extended the runway. Q. But it's their highway? A. It's there, we turned it over to them for maintenance." At another place they point to the answer of "Yes, sir" when this witness was asked "So you had to build it for the State Highway Department?" This same witness had testified that the appellant had nothing whatever to do with the preparation

of the plans or the letting of the contract for the construction of the highway in question. His testimony was as follows:

"Q. Did the Highway Department have anything to do with it? A. Nothing.

"Q. To your knowledge did it have anything to do or anything in connection with the construction of the road? A. They had nothing to do with it."

The witness, R. O. Richardson, who was an employee of the Corps of Engineers at the Air Force Base, testified that the appellant had nothing to do with the construction of the highway in question, and that it was only after the completion of the highway that it was taken over by the appellant for maintenance.

The testimony to which our attention has been directed fails to show that the appellant constructed the highway. The isolated statements above referred to do not have the effect of proving the construction of the road by the appellant. All of the evidence is to the contrary. Certainly, we can conclude from the evidence that it was the purpose of the Corps of Engineers to construct a road that would meet the approval of the appellant and that it would accept such road so constructed by the Corps of Engineers into the highway system of this State, and then permit the closing of that part of old Highway No. 707 that interfered with the extension of the aircraft runways at the Air Base. However, the testimony in this case falls far short of showing that the appellant constructed the relocated portion of Highway No. 707.

We are fully cognizant of the rule that in passing upon a motion by a defendant for a directed verdict, the testimony must be viewed in the light most favorable to the plaintiff, and if more than one reasonable conclusion can be drawn or if the inferences to be drawn from the testimony are in doubt, the case should be submitted to the jury. *Richardson v. Pilot Life Ins. Co.*, 237 S. C. 47, 115 S. E. (2d) 500. However, if the only reasonable inference to be drawn from all the testimony is that the plaintiff has

failed to make out his case against the defendant, it would then be the duty of the trial Judge to order a nonsuit or direct a verdict against such plaintiff.

We think there is insufficient evidence in the record to connect the appellant with the construction of the highway in question so as to render it liable to the respondent for damaging or taking his property, in violation of Article I, Section 17, of the 1895 Constitution. We think the only reasonable conclusion deducible from all the evidence is that the Corps of Engineers of the United States Government designed and prepared the plans and specifications for said highway, actually constructed such and the ditches in connection therewith. The fact that the appellant subsequently took over said highway for maintenance, after the completion of construction, would not make it liable to the respondent under the pleadings and the evidence in this case.

The trial Judge was in error in refusing to grant the appellant's motion for a directed verdict. The case is remanded to the lower Court for entry of judgment in favor of the appellant.

Reversed.

TAYLOR, C. J., and OXNER, LEGGE and LEWIS, JJ., concur.

OXNER, Justice (concurring).

It is stated in the leading opinion that "there was evidence that waters were impounded by the construction of the highway in question and such flooded respondent's land because of the inadequacy of the drainage ditches along the sides of said highway." If after taking over the road, the Highway Department refused to rectify this condition, it would be liable for any damages resulting from its continuance. *Townes v. City Council of Augusta,* 52 S. C. 396, 29 S. E. 851; *Chick Springs Water Co. v. State Highway Department,* 178 S. C. 415, 183 S. E. 27. There is also authority to the effect that if under the power of eminent domain one agency

takes or damages property without paying compensation, its successor by adopting the original taking subjects itself to such obligation. 18 Am. Jur., Eminent Domain, Section 146, page 774; Nichols on Eminent Domain, Volume 6, Section 28.4; 30 C. J. S., Eminent Domain, § 393, page 103; 29 C. J. S., Eminent Domain, § 195, page 1098; *State Highway Commission v. Flint,* 177 Miss. 830, 172 So. 299. However, this action was neither brought nor tried on either of these theories but solely upon the theory that the Highway Department actually did the construction or participated therein. Viewing the case in that light, I agree that appellant's motion for a directed verdict should have been granted.